# EXHIBIT 1



| | National Association of Independent Colleges and Universities | 1025 Connecticut Ave. N.W. Suite 700 Washington, DC 20036-5405 | Tel: (202)785-8866 Fax: (202)835-0003 www.naicu.edu |

October 14, 2025

Mr. Brian Fu
U.S. Department of Education
Office of Postsecondary Education
400 Maryland Avenue SW
Washington, DC 20202

**Docket ID ED–2025–SCC–0382**

Dear Mr. Fu,

On behalf of the National Association of Independent Colleges and Universities (NAICU), the more than 1,700 private, nonprofit colleges and universities it represents, and the undersigned associations, we write in response to a request for comments regarding proposed changes to the Integrated Postsecondary Education Data System (IPEDS) (Docket ID ED–2022–SCC–0382, as published on August 15, 2025, Federal Register). The following addresses the proposed addition of the Admissions and Consumer Transparency Supplement (ACTS).

NAICU's membership reflects the spectrum of private, nonprofit higher education in the U.S., and includes major research universities, faith-based colleges, Historically Black Colleges and Universities, Hispanic-Serving Institutions and other Minority-Serving Institutions, art and design colleges, conservatories of music, traditional liberal arts and science institutions, women's colleges, work colleges, two-year colleges and schools of law, medicine, engineering, business and other professions.

As the national voice of the 1,700 private, nonprofit colleges and universities in the nation, NAICU recognizes the importance of appropriate federal data collection and has consistently supported efforts to provide useful and reliable information that reflects the distinctiveness and integrity of higher education. **At the same time, we are concerned that the ACTS data collection is proceeding without thorough review or assessment and respectfully request that it be deferred until critical privacy, timing, and formatting issues have been resolved.**

The current design and timeframe risks the publication of inaccurate and inconsistent data, which could in turn mislead students and families. The following points outline our specific concerns.

- The proposed data collection would benefit from using proven IPEDS survey methods, providing the survey process with structured feedback informed by data providers and users that would clarify definitions and instructions. For example:

  - Critical variables like *selective admissions*, *first-generation status*, *graduate degree*, *application*, and many other key terms are undefined.
  - Methods for identifying graduating cohorts, standardizing GPA quintiles, and other proposed metrics are unclear.
  - Redundant fields overlap with existing IPEDS surveys to add unnecessary reporting burdens.



- Significant data gaps exist due to system updates, privacy purges, changing definitions, and - most importantly - information that has never been collected for admissions or financial aid purposes (e.g., parent education, family income, and test scores).
- Graduate and professional admissions data are not delineated, risking inaccurate aggregation and inconsistent reporting across institutions.

Addressing these items would  ensure institutions could provide accurate responses and avoid potential scrutiny. A fully developed collection process is needed, one that provides a clear and reasonable submission window, detailed instructions, and appropriate training so that already strained institutions - frequently staffed by only one individual who reports data to IPEDS - can work with campus colleagues and student information system providers to adapt and extract the required data effectively.

- To best protect student information, we recommend the proposed collection clearly outline safeguards that are consistent with federal privacy standards. Without safeguards, the disaggregated data will result in numerous small, potentially identifiable cells that put student privacy at risk.

  Equally important is ensuring that students are clearly informed, as required by transparency requirements, and given options about how their personal information is used beyond admission and financial aid. For example, using derived income data for purposes beyond aid administration warrants careful consideration of potential privacy implications.

- Institutions would benefit from clear guidance on how ACTS data will be used to check compliance. For example, it is unknown what will count as a violation - changing demographics, lower test scores among selected student groups - or why certain four-year institutions might be considered higher risk.

  There are also concerns about appropriate data use. For example:
  - Historical data predating the court decision may be used to assess performance, even though institutions were not previously required to comply.
  - Proposed variables such as institutional aid and Pell Grant eligibility are not part of admission decisions and therefore may fall outside the ruling's scope.
  - In addition to GPA and test scores, admission factors such as veteran status, special skills, and other unique characteristics can create distinct clusters within targeted populations, which may indirectly affect school performance.

  Overall, relying on group-level data instead of the court's focus on individual review raises concerns that the collection may not address key proposal issues and could even lead to baseless or unintended penalties.

- The strain this collection will place on institutions cannot be overstated. The proposal greatly underestimates both the burden and timeframe, particularly for colleges with limited staff, infrastructure, and resources already stretched thin by Financial Value Transparency (FVT) reporting.



According to a nationwide survey conducted by the Association for Institutional Research (AIR), more than half of institutions (55%) estimate the collection will take over 250 hours to complete, and one-quarter (25%) expect it to exceed 500 hours - far beyond the Department's estimate of just 11.2 hours. **Three out of four schools (72%) are not confident that they will meet reporting deadlines**. And because the survey involves multiple campus offices, essential student services such as advising, admissions, and financial aid counseling will be disrupted.

In summary, a collection of this size cannot be implemented quickly without major data and compliance risks. Institutions will struggle to meet requirements on time and accurately report their data, raising the chance of incomplete reporting, inconsistent methods of collecting data across campuses, and errors.

Without a realistic view of institutional capacity and a reasonable timeline, the ACTS risks falling short of federal data and privacy standards and undermining public trust in higher education data.

NAICU urges the Department to delay the collection until the issues outlined above are addressed. Once resolved, we would recommend a pilot among a smaller group of schools, collecting one year of essential data for a single cohort. A pilot cohort would allow for the development of burden estimates and creation and testing of clear rules regarding cell minimums, small-cell reporting, data usage, and data accumulation.

We appreciate the opportunity to comment on this proposal. We urge the Department to recognize the unique challenges faced by private, nonprofit institutions in implementing the ACTS collection.

Sincerely,

Barbara K. Mistick
President

On behalf of the following organizations:

Alabama Association of Independent Colleges and Universities
Asociacion de Colegios y Universidades Privadas de Puerto Rico (ACUP)
Association of Chiropractic Colleges
Association of Independent Colleges & Universities in Massachusetts
Association of Independent Colleges and Universities of Pennsylvania
Association of Independent Colleges and Universities of Rhode Island
Association of Independent Kentucky Colleges and Universities
Association of Jesuit Colleges and Universities
Association of Presbyterian Colleges and Universities



Association of Vermont Independent Colleges
Connecticut Conference of Independent Colleges
Council for Christian Colleges & Universities
Council of Independent Colleges
Federation of Independent Illinois Colleges and Universities
General Board of Higher Education and Ministry
Georgia Independent College Association
Independent Colleges and Universities of Florida
Independent Colleges and Universities of Missouri
Independent Colleges and Universities of Texas
Independent Colleges of Washington
International Association of Baptist Colleges and Universities
Iowa Association of independent colleges and universities
Kansas Independent College Association
Louisiana's Association of Independent Colleges and Universities
Maine Independent Colleges Association
Michigan Independent Colleges & Universities
Minnesota Private College Council
North Carolina Independent Colleges and Universities
Oregon Alliance of Independent Colleges and Universities
Tennessee Independent Colleges & Universities Association
Wisconsin Association of Independent Colleges and Universities
Work Colleges Consortium