**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, *et al.,*<br><br>    *Plaintiffs*,<br>  v.<br><br>U.S. DEPARTMENT OF EDUCATION, *et al.,*<br><br>    *Defendants*. | Case No. 1:26-cv-11229-FDS |

**MEMORANDUM IN SUPPORT OF CONNECTICUT CONFERENCE OF INDEPENDENT COLLEGES, MAINE INDEPENDENT COLLEGES ASSOCIATION, NORTH CAROLINA INDEPENDENT COLLEGES AND UNIVERSITIES, AND OREGON ALLIANCE OF INDEPENDENT COLLEGES AND UNIVERSITIES' MOTION TO INTERVENE**

**INTRODUCTION**

The Connecticut Conference of Independent Colleges ("CCIC"), Maine Independent Colleges Association ("MICA"), North Carolina Independent Colleges and Universities ("NCICU"), and Oregon Alliance of Independent Colleges and Universities ("OAICU," and together, the "Associations") seek leave to intervene in this suit challenging the Admissions and Consumer Transparency Supplement ("ACTS") survey. Implementation of the ACTS survey will cause imminent and irreparable harm to the Associations' members[1] absent emergency relief.

Until March 24, the Associations' members were shielded from those harms by this Court's Temporary Restraining Order issued on March 13, 2026, ECF No. 12, which extended the deadline for all institutions of higher education ("IHEs") to complete the ACTS survey. The Department of Education separately communicated to IHEs that the deadline was extended to March 25, 2026, and later to March 31, 2026. In light of the narrowed scope of the Temporary Restraining Order issued on March 24, 2026, ECF No. 75, and the Department of Education's communications, the Associations' members were ultimately required to submit either full responses by March 31, 2026, or a partial response by that date in order to seek an additional extension of the deadline to April 8, 2026. Members that sought that additional extension now face the impending April 8 deadline. And all members that have already submitted data face potential fines or enforcement actions based on incomplete or unreliable data associated with ACTS's flawed design and risks to their students' privacy. Because the Associations timely seek to raise substantially the same claims as do the Plaintiff States, intervention is both permissible and appropriate as a matter of judicial economy.

---

[1] NCICU does not refer to its constituent institutions as "members," but the Associations use that umbrella term for the sake of convenience.

**BACKGROUND**

The Associations are four groups of IHEs that seek to advance their members' and those members' students' interests.

CCIC is an association of fourteen accredited nonprofit independent colleges and universities in Connecticut that enroll over 88,000 students. CCIC is dedicated to improving, strengthening, and growing Connecticut private colleges and independent universities. CCIC serves its members through government relations, public policy development, research analysis, communications, and coordinated member services. CCIC's members are required to submit data through IPEDS.

MICA represents eleven independent, nonprofit colleges and universities throughout Maine that serve over 32,000 students. While they share the attributes of being independent and nonprofit, these institutions are highly diverse and serve very different aspects of the educational needs of Maine's people. MICA's members are required to submit data through IPEDS.

NCICU's 36 accredited colleges and universities reflect a broad array of private, nonprofit higher education institutions, including major research universities, Historically Black Colleges and Universities, colleges for women, Minority-Serving Institutions, traditional liberal arts and science institutions, a work college, a two-year college, and professional schools of law, medicine, engineering, and business, among others. NCICU colleges and universities enroll more than 83,000 students from all 100 counties in North Carolina, 50 states, and countries around the world. NCICU represents independent higher education in matters of state and federal public policy, in addition to being an advocate on issues with other sectors of education in the state. NCICU's members are required to submit data through IPEDS.

OAICU is an association of accredited, nonprofit private colleges and universities in Oregon. Its mission is to advocate for and nimbly serve its member institutions by responding promptly and flexibly to their evolving needs, fostering collaboration and increasing organizational capacity, and championing the transformative power of independent, nonprofit higher education. OAICU's members are required to submit data through IPEDS.

The ACTS survey directly and profoundly affects the Associations' members. The survey imposes unprecedented data collection requirements on IHEs with remarkably little notice, creating severe practical burdens, unresolved privacy risks, and data quality concerns that the Department of Education ("the Department" or "ED") has not adequately addressed.

The Associations' members have for decades relied on the Department's well-established, deliberative, and collaborative processes to ensure that new Integrated Postsecondary Education Data System ("IPEDS") data collections are clearly defined, technically feasible, and implemented with sufficient lead time to produce reliable data. ACTS upended those reliance interests, giving IHEs a few short months to comply with its sweeping requirements, including—for the first time— retrospective data going back seven years. ED implemented ACTS in the face of thousands of comments, including from the Associations,[2] pointing out these problems and raising serious concerns around the survey's feasibility, implementation, and timeline. The Associations now seek to intervene in this suit to protect its members' interests in light of those concerns.

---

[2] CCIC, MICA, NCICU, and OAICU each joined the National Association of Independent Colleges and Universities ("NAICU") and dozens of other higher education associations in submitting a joint comment in response to the Department's proposed addition of the ACTS survey. *See* NAICU Comments on IPEDS, Docket ID at 3, ED-2025-SCC-0382 (U.S. Dep't Educ. Oct. 14, 2025).

3

## ARGUMENT

### I.   The Associations Satisfy the Requirements for Permissive Intervention.

Pursuant to Rule 24(b)(1) of the Federal Rules of Civil Procedure, this Court may permit "anyone" to intervene in this action so long as two requirements are satisfied. First, the proposed intervenor must file a "timely motion." Fed. R. Civ. P. 24(b)(1). Second, the proposed intervenor must have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Associations satisfy both requirements.

### A.  The Associations' Motion to Intervene Is Timely.

The timeliness requirement "is of first importance" when considering a motion to intervene. *Caterino v. Barry*, 922 F.2d 37, 40 (1st Cir. 1990) (quoting *United Nuclear Corp. v. Cannon*, 696 F.2d 141 (1st Cir. 1982)).  The First Circuit has articulated a four-part test to assess timeliness:

> (i)    the length of time the prospective intervenors knew or reasonably should have known of their interest before they petitioned to intervene;
>
> (ii)   the prejudice to existing parties due to the intervenor's failure to petition for intervention promptly;
>
> (iii)  the prejudice the prospective intervenors would suffer if not allowed to intervene; and
>
> (iv)   the existence of unusual circumstances militating for or against intervention.

*Id*. (quoting *United States v. Metro. Dist. Comm'n*, 865 F.2d 2, 5 (1st Cir. 1989)).

Considering the factors above, the Associations' motion is timely for three reasons.

*First*, the case is at a very early stage. Plaintiff States initiated this suit approximately three weeks ago. Defendants have yet to file a responsive pleading, no dispositive motions have been filed by any party, and the Court has yet to finally resolve any issue on the merits. Moreover, the Associations' learned just last week that their members would not be protected by the relief to the Plaintiff States, and promptly sought to intervene.

4

*Second*, and relatedly, the Associations' intervention at this juncture would not prejudice any existing party. Because the case remains at an early stage, there is not yet a briefing schedule or discovery plan that would be affected by intervention. Moreover, as discussed further below, the Associations seek to proceed on the same schedule as the existing provisional intervenors and are prepared to proceed on any briefing schedule set by the Court. If the intervention motions are ultimately granted, the Associations anticipate coordinating filings and otherwise consolidating their efforts with the other intervenors going forward, for the convenience of the Court and the parties.

*Third*, as set forth in more detail in the Associations' forthcoming motion for a temporary restraining order, the Associations' members would suffer imminent irreparable harm if not permitted to intervene. The Department of Education communicated to IHEs that the deadline for the ACTS survey was extended to March 25, 2026, and later to March 31, 2026. All IHEs were then required to either submit their full ACTS survey data by March 31 or submit three years of data by the same date in order to obtain a short extension to April 8 for full compliance. The Associations' members have thus submitted some data, though many still have to submit four additional years of data by the April 8 deadline. Now, members with extensions will be forced to either complete the ACTS survey—bearing severe practical burdens and compounding the privacy risks their students face—or miss the operative deadline and face enforcement action. And all members that submitted data face the prospect of enforcement actions based on the ACTS survey's flaws and the risk that the government will publicly post their data and compromise their students' privacy.

**B. The Associations' and the Plaintiff States' Claims Share Common Questions of Law and Fact.**

Permissive intervention pursuant to Rule 24(b)(1)(B) of the Federal Rules of Civil Procedure requires only that the proposed intervenor has a single "claim or defense that shares with the main action a [single] common question of law or fact." *Id*. The Associations easily satisfy this requirement.

As set forth in the attached Proposed Complaint, the Associations raise precisely the same legal claims as do Plaintiff States. Accordingly, each of the following questions of law is common to the claims raised by Plaintiff States and the Associations, respectively:

- Whether Defendants exceeded their authority in approving and implementing the ACTS survey;

- Whether Defendants failed to observe procedures required by the Paperwork Reduction Act, 44 U.S.C. § 3501 *et seq.*; 5 C.F.R. § 1320, and/or the E-Government Act of 2002, Pub. L. No. 107-347, § 208, 116 Stat. 2899, 2921, in approving and implementing the ACTS survey; and

- Whether Defendants acted arbitrarily and capriciously in approving and implementing the ACTS survey.

The Associations' claims also share common questions of fact with the pending claims by Plaintiff States. Common factual questions include, but are not limited to, the following:

- Whether Defendants provided sufficient time for IHEs to collect and submit required information;

- Whether Defendants failed to consider an important aspect of the problem in approving and implementing the ACTS survey;

- Whether Defendants failed to consider reasonable alternatives to implementing the ACTS survey;

- Whether Defendants have implemented the ACTS survey in an incoherent and inconsistent manner; and

- Whether Defendants deviated from past methods of implementing major changes to IPEDS without adequate explanation.

6

In short, the Associations' and Plaintiff States' claims share all legal questions and many factual questions. For that reason, as well as the timeliness of this motion, the Associations satisfy all requirements for permissive intervention.

**II.     The Associations' Intervention Would Promote Judicial Economy Without Creating Undue Delay or Prejudice.**

Where the timeliness and common-question requirements are satisfied, the Court enjoys "very broad discretion" to grant permissive intervention. *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 40 (1st Cir. 2020). In exercising such discretion, Rule 24(b)(3) of the Federal Rules of Civil Procedure directs the Court to consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Additionally, the court "may consider almost any factor rationally relevant to the intervention determination." *T-Mobile Ne. LLC*, 969 at 40 (quotations omitted).

Here, a favorable exercise of discretion by the Court is warranted. The Associations' intervention will not unduly delay or prejudice the adjudication of any party's rights. In fact, the Associations' intervention would promote judicial economy by allowing the same claims against the same Defendants related to the same agency action on the basis of the same administrative record to be decided on the same schedule by the same Court.

The Associations are prepared to brief their claims in accordance with any schedule set by this Court and would respectfully request they be subject to the same schedule as the two other associations of IHEs seeking intervention. As this Court is aware, it provisionally allowed the two other associations to intervene and issued a temporary restraining order extending their members' deadline to complete the ACTS survey through April 14; it also set a briefing deadline for Defendants of April 9 and a hearing on April 13.

The Associations respectfully submit that the same expedited schedule would be appropriate to resolve their motions. For the reasons set forth in the Associations' Memorandum in Support of their Motion for a Temporary Restraining Order and accompanying Declarations, the Associations' members face imminent, irreparable harm that an expedited schedule is necessary to avert. This Court has discretion to set such a schedule. *See* 28 U.S.C. § 1657 (allowing courts to determine the "order in which civil actions are heard and determined" and providing that "the court shall expedite consideration of . . . any action for temporary or preliminary injunctive relief"); Fed. R. Civ. P. 6(c)(1)(C) (permitting amendment of motion deadlines as ordered by the court); Local Rule 7.1(a)(1) (permitting amendment of deadlines "as required by the progress of the case"). And it would be appropriate to do so here: The Associations filed their motions just weeks after they learned that this Court's TRO of March 24, 2026, ECF No. 75, would not protect its members, in contrast with the TRO of March 13, 2026, ECF No. 12. Their members face the same data-quality concerns and privacy risks as covered institutions. The Court has already recognized that these harms warrant emergency relief. Expedited consideration of the Associations' motions would ensure that their members are not left without recourse while facing the same irreparable harms. Placing the Associations on the same schedule would not prejudice existing parties: The Associations raise the same claims as the Plaintiff States and provisional intervenors. And because the Court has already granted provisional intervention to two other associations, any additional issues raised by intervention will already be before the Court and briefed by the Defendants (the only parties opposing intervention).

## CONCLUSION

CCIC, MICA, NCICU, and OAICU respectfully request that in order to litigate this motion as well as their Motion for a Temporary Restraining Order on the same schedule as the existing provisional intervenors, the Court grant intervention on a provisional basis; place them

on the same briefing and hearing schedule as the provisional intervenors; and ultimately grant

CCIC, MICA, NCICU, and OAICU's motion for permissive intervention.


Dated:  April 3, 2026

Respectfully submitted,

/s/ *Lindsay Harrison*

JENNER & BLOCK LLP

Ishan K. Bhabha *(pro hac vice)*
Lindsay C. Harrison *(pro hac vice)*
Elizabeth Henthorne *(pro hac vice)*
Hilary Ledwell *(pro hac vice)*
Mary-Claire Spurgin *(pro hac vice)*
1099 New York Avenue NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
IBhabha@jenner.com
LHarrison@jenner.com
BHenthorne@jenner.com
HLedwell@jenner.com
MSpurgin@jenner.com

Shoba Pillay, BBO No. 659739
353 North Clark Street
Chicago, IL 60654
Tel: (312) 222-9350
SPillay@jenner.com

*Counsel for Connecticut Conference of
Independent Colleges, Maine Independent
Colleges Association, North Carolina
Independent Colleges and Universities, and
Oregon Alliance of Independent Colleges
and Universities*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of April, 2026, I caused the foregoing to be electronically filed with the clerk of the court for the U.S. District Court for the District of Massachusetts, by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, a true and correct copy of the foregoing instrument and all attachments.


Dated: April 3, 2026                              /s/ Lindsay C. Harrison

Lindsay C. Harrison (*pro hac vice)*
JENNER & BLOCK LLP
1099 New York Avenue NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
LHarrison@jenner.com