## DECLARATION OF VASSAR COLLEGE

I, Biniam Tesfamariam, declare as follows:

1.      I am the Director of Institutional Analysis and Strategic Decision Support of Vassar College, a private, nonprofit college located in Poughkeepsie, New York. I have held this position since December 2017.

2.      As Director of Institutional Analysis and Strategic Decision Support, I have direct oversight of Vassar's institutional research functions, including Vassar's participation in the Integrated Postsecondary Education Data System ("IPEDS").

3.      I have personal knowledge of the matters set forth in this declaration or have knowledge of such matters based on my review of information and records gathered by Vassar personnel and could testify thereto.

4.      Vassar has participated in federal student financial aid programs and reported data through IPEDS for many years. Vassar takes its IPEDS reporting obligations seriously and has historically dedicated the time and resources necessary to ensure the accuracy and reliability of its submissions.

5.      In the past, when the Department of Education (the "Department") has introduced new IPEDS survey components, those changes have been subject to a well-established, multi-step process that included Technical Review Panels ("TRPs"), collaboration with affected institutions, and at least one preview or optional year. This process gave institutions like Vassar adequate time and guidance to produce reliable data.

6. The Admissions and Consumer Transparency Supplement ("ACTS") process for collecting institutional feedback was extremely limited, despite the extensive scope of the data requested.

7. The ACTS survey, as implemented, required Vassar to compile and report an extensive set of data fields—including retrospective data spanning seven prior academic years—resulting in approximately 70,000 new reporting fields. This represented a dramatic departure from the scope and volume of any prior IPEDS data collection. Vassar had not previously been required to submit student-level raw data in this manner.

8. The ACTS survey component required Vassar personnel to divert substantial time and resources from their core responsibilities to compile data that ACTS demanded.

9. Vassar's staff were given a heavy burden to compile the required data within the compressed timeframe the Department imposed. The volume of new reporting fields, the retroactive scope of the data request, the shifting data templates, which were updated on January 26, 2026, contributed to a process that could affect the reliability of the data.

10. These ambiguities mean that Vassar's institutional research staff are forced to make judgment calls, to the best of their abilities, without assurance that their interpretations are consistent with what the Department intended or with what other institutions are reporting. As a result, institutions may have applied the definitions differently, which could affect the consistency and reliability of the reported data.

11. Much of the historical data that ACTS required Vassar to report had not previously been collected or maintained in the format the survey specified. Compiling three or seven years of retrospective data—across categories including parental education, family income ranges, and test score quintiles—requires Vassar's staff to locate, extract, and reformat information from multiple

disparate systems, a process that is time-intensive and inherently prone to error given the compressed timeline.

12.    On March 5, 2026, NCES extended the submission deadline to April 8, 2026 for institutions that had uploaded at least three years of ACTS data. Vassar uploaded sufficient data to qualify for this extension and is operating under the April 8 deadline. Vassar's data remains unlocked in the IPEDS system.

13.    Faced with the choice between uploading under these conditions or risking fines of up to $71,545 per violation and the potential loss of Title IV eligibility, Vassar felt compelled to upload ACTS data to qualify for an extension.

14.    All of Vassar's students who receive federal financial aid depend on Vassar's continued Title IV eligibility, and the loss of that eligibility would be devastating to Vassar and the students it serves.

15.    Vassar uploaded ACTS data on or about March 16, 2026. Vassar's data has not been locked and remains subject to an April 8, 2026 extended deadline. Vassar uploaded this data knowing that its uploads may contain inconsistencies and errors resulting from the compressed timeline, the lack of clear guidance, and the absence of the quality-assurance processes that have historically ensured data integrity in IPEDS collections.

16.    Based on my oversight of the data compilation process, Vassar is concerned that there could be errors in the data. This is not due to any lack of diligence on the part of Vassar's institutional research staff, who worked extensively to comply with the survey's requirements. Rather, the conditions under which the data were compiled—the compressed timeline, the ambiguous definitions, and the absence of the vetting processes that have historically ensured data quality in IPEDS collections—were simply not conducive to producing the kind of reliable,

validated information that IPEDS has historically demanded and that Vassar has historically been proud to provide.

17.    Vassar is deeply concerned that the Department may review its submission and draw conclusions or initiate enforcement actions based on data that could contain errors due to the compressed timeline.

18.    Vassar is also deeply concerned about the privacy implications of the data it has submitted. The ACTS survey demands data at what is effectively the unit-record level for individual students—requiring institutions to cross-tabulate admissions and outcomes data by race, sex, income, test scores, and other characteristics.

19.    For an institution like Vassar, which has a very small student population, this level of disaggregation is likely to require the College to compromise its institutional and/or legal obligations to promote and respect the privacy interests of its students. Due to the ACTS survey demands for cross tabulation, there are cells that could result in having only 1-2 people in a cell, creating data samples that are too small to draw any reliable conclusions or inferences.

20.    Vassar has legal and institutional obligations to protect its students' personally identifiable information, obligations which are reflected for example in the Family Educational Rights and Privacy Act ("FERPA"). The submission of this granular data to the Department— which has stated its intent to use ACTS data for enforcement purposes, and which has historically made IPEDS data publicly available—places those obligations in direct tension with the demands of the survey.

21.    For all of these reasons, Vassar believes that its already uploaded ACTS data should not be reviewed, relied upon, or used by the Department as a basis for any enforcement action. Production of the data also raises serious privacy concerns for its students.

22.     For these reasons, if the Court denies the ICG Plaintiff-Intervenors' motion, Vassar may be exposed to reputational risk, as the submitted data may contain errors due to the constraints on validation and the compressed timeline.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on April 6, 2026 in Poughkeepsie, New York.


*Biniam Tesfamariam*

Biniam Tesfamariam, PhD