**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

COMMONWEALTH OF MASSACHUSETTS,
*et al.*,

                    *Plaintiffs*,

        v.

U.S. DEPARTMENT OF EDUCATION,
*et al.*,

                    *Defendants*.

Case No. 1:26-cv-11229-FDS

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF INTERVENOR-PLAINTIFF**
**ASSOCIATIONS' MOTIONS FOR A TEMPORARY RESTRAINING ORDER**

**INTRODUCTION**

The Association of American Universities, Association of Independent Colleges and Universities in Massachusetts, Connecticut Conference of Independent Colleges, Maine Independent Colleges Association, North Carolina Independent Colleges and Universities, and Oregon Alliance of Independent Colleges and Universities (collectively, the "Associations") submit this supplemental brief in support of their pending motions for a temporary restraining order. At yesterday's hearing, the Court noted that the parties may wish to file supplemental briefs on discrete topics, and could do so as long as they were filed swiftly. The Associations submit the instant memorandum on two narrow subjects: (1) relief under Section 705 of the Administrative Procedure Act is warranted and appropriate here; and (2) schools will face irreparable harm absent preliminary relief.

**ARGUMENT**

### I. Section 705 Relief Is Warranted.

*First*, given the Court's comments at the hearing regarding judicial restraint, it is important to consider the ways in which Section 705 relief is more modest than preliminary injunctive relief. For one, it operates on the legal status of the rule, rather than commanding executive behavior, as with an injunction. *See Make the Rd. New York v. Noem*, No. 25-5320, 2025 WL 3563313, at *16 (D.C. Cir. Nov. 22, 2025) ("When a court enters a stay [under section 705], it does not direct individuals to act or not to act. Instead, the order simply 'suspend[s] the [legal] source of authority to act[.]'" (citation omitted)); *see also Afr. Cmtys. Together v. Noem*, No. 25-CV-13939-PBS, 2026 WL 395732, at *8 (D. Mass. Feb. 12, 2026) (Saris, J.), *appeal filed*, No. 26-1254 (1st Cir. Mar. 13, 2026) (reasoning that Section 705 "does not operate *in personam*" (internal quotation marks and citation omitted)). Section 705 is thus a less intrusive form of judicial intervention even if the practical effects reach a greater number of entities. Moreover, Section 705's operation on the

1

agency action itself is specifically prescribed by statute. Universal injunctions have been criticized in part because they represent courts exercising broad remedial discretion beyond what any statute expressly authorizes. By contrast, Section 705 relief would not require the Court to rely on its own equitable authority.

*Second*, courts routinely issue the very relief the Associations seek here. Since the Supreme Court's decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), a significant majority of courts have continued to issue Section 705 stays that apply to the agency action, not to particular parties. *See, e.g.*, *Make the Rd. New York*, 2025 WL 3563313, at *33-36; *Afr. Cmtys.Together*, 2026 WL 395732, at *8, *14; *In Freedom Network USA v. President Donald J. Trump*, No. 25-cv-12419, 2026 WL 800392, at *22-23 (N.D. Ill. Mar. 23, 2026); *Neguse v. U.S. Immigr. & Customs Enf't II*, No. 25-CV-2463, 2026 WL 575509, at *19 (D.D.C. Mar. 2, 2026); *A.C.R. v. Noem*, 809 F. Supp. 3d 103, 128, 129 n.25 (E.D.N.Y. 2025), *reconsideration denied*, No. 25-cv-3962, 2026 WL 102611 (E.D.N.Y. Jan. 14, 2026), *appeal filed*, No. 26-236 (2d Cir. Feb. 3, 2026); *Am. Hosp. Ass'n v. Kennedy*, No. 2:25-cv-00600, 2025 WL 3754193, at *9 (D. Me. Dec. 29, 2025), *appeal filed*, No. 25-2236 (1st Cir. Dec. 30, 2025); *Cabrera v. U.S. Dep't of Lab.*, 792 F. Supp. 3d 91, 105-07 (D.D.C. 2025), *appeal dismissed*, No. 25-5340, 2025 WL 3635881 (D.C. Cir. Dec. 15, 2025); *Make the Rd. New York v. Noem*, 805 F. Supp. 3d 139, 173-74 (D.D.C. 2025); *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 103-04 (D.D.C. 2025); *City of Columbus v. Kennedy*, 796 F. Supp. 3d 123, 175-76 (D. Md. 2025); *City of Chicago v. U.S. Dep't of Homeland Sec.*, No. 25-cv-5463, 2025 WL 3171302, at *2-*3 (N.D. Ill. Nov. 13, 2025); *Neguse v. U.S. Immigr. & Customs Enf't I*, 813 F. Supp. 3d 45, 99-100 (D.D.C. 2025).

And courts have stayed agency actions in all their applications based on a showing of irreparable harm to the parties before it. *See Make the Rd. New York*, 2025 WL 3563313, at *18,

2

*32-33, *35-*36 (rejecting the argument that a broader showing of irreparable harm is required); *Career Colls. & Schs. of Tex. v. Dep't of Educ.*, 98 F.4th 220, 234-35, 255-56 (5th Cir. 2024) (relying on irreparable harm to the parties before the court to support relief that was not party-restricted under Section 705); *Am. Hosp. Ass'n*, 2025 WL 3754193, at *9 (rejecting argument that "the remedy should be tailored only to address the irreparable harm shown by specific members of these associations"). Those decisions belie the government's suggestion that a showing of "global irreparable harm" is required for Section 705 relief.

*Third*, because a Section 705 stay "suspend[s] the [legal] source of authority to act," it would stay all challenged agency action, including the submission deadline for the ACTS survey as well as related implementation and enforcement activity. *Make the Rd. New York*, 2025 WL 3563313, at *16 (quoting *Nken v. Holder*, 556 U.S. 418, 428–29 (2009)). As discussed further below, such relief would prevent irreparable harm to the Associations' members regardless of whether they have already submitted some or all data through the ACTS survey because it would address the risk of enforcement all members face.

*Finally*, Defendants have forfeited any responses regarding the appropriateness of Section 705 relief here. Although the Plaintiff States requested Section 705 relief in their motion for a temporary restraining order, ECF No. 6 at 1, and each Association requested the same in their own motions for a temporary restraining order, ECF No. 85 at 1, ECF No. 111 at 1, ECF No. 132 at 1, not one of Defendants' filings in opposition to those motions challenged the propriety of granting Section 705 relief in this action, *see* ECF Nos. 68, 99, 167. As the First Circuit has said, arguments raised for the first time at oral argument should not be considered, as "[p]arties must include within the four corners of their briefs any arguments they wish the court to consider." *Mass. Lobstermen's Ass'n, Inc. v. Menashes*, 127 F.4th 398, 403 n.2 (1st Cir. 2025).

3

**II.      Schools Will Face Irreparable Harm Absent Preliminary Relief.**

Notwithstanding Defendants' arguments to the contrary, the Associations' member institutions face irreparable harm absent preliminary relief from this Court. That is true both because most of the Associations' members have yet to complete the ACTS survey and because, even for those schools that have completed and finalized their data submission, the risk of enforcement that the Court has previously recognized remains.

*First*, Defendants' contention that a "vast majority of the Putative Intervenors' members have completed or made substantial progress on their ACTS component submissions," *see* Defs.' Opp'n to Intervenors' Mot. for Temp. Restraining Order 7-8, ECF No. 167, is misleading. Defendants refer to the "submission" of data, without being precise about what stage of the process they are talking about. *See id.* at 4-5 (stating that 73% of AAU members, 72% of AICUM members, and 78% of CCIC, MICA, NCICU, and OAICU's members have "submitted data for all requested years of the ACTS component"). But properly understood, the government's data tells a different, much less rosy, story. Until an IHE has 7 "completed" files, it has not—by any measure—finished its ACTS submission. *See* Supplemental Declaration of Barbara R. Snyder ¶¶ 6, 16 ("Snyder Suppl. Decl."). Other statuses reflected in the government's chart require significant additional work before submissions are deemed "completed."

In context, then, the government's chart shows that a significant majority of the Associations' members have yet to complete their ACTS data submission. *See* Second Declaration of Matthew Soldner, Interim Deputy Commissioner of the National Center for Education Statistics ¶¶ 2-3, ECF No. 168-1 ("Second Soldner Decl."); Snyder Suppl. Decl. ¶ 6. Finalizing the remaining ACTS submissions will impose a heavy burden on those institutions, as completing the outstanding steps requires substantial additional work. Snyder Suppl. Decl. ¶¶ 8-17. For example, for the many institutions that have multiple files in the "edited" status, they have yet to undertake

4

the onerous process of resolving edit errors with the Department of Education, let alone resolving issues such as continued definitional uncertainty. *Id.* ¶¶ 11-13.

*Second*, even for those institutions that have made a final submission of some or all ACTS data, the enforcement risk the Court previously recognized as irreparable harm has not been assuaged. *See* Preliminary Injunction Mem. & Order at 32-34, ECF No. 142. Defendants simply reiterate their earlier arguments—which the Court rejected—that the risk of enforcement is too speculative to constitute irreparable harm. *See id.* at 33-34; *see also* Defs.' Opp'n at 7. They now add that the ACTS instructions allow IHEs to indicate they lack data or that their data may be inaccurate. *Id.* at 9-10. But this suggestion overlooks a critical problem: Even if the ACTS survey contemplates that an IHE can flag such problems, it says nothing about the subsequent likelihood of enforcement. Certainly it does not alter the exhortation of the President that if institutions fail to submit data in a timely manner or are found to have submitted incomplete or inaccurate data, the Department "shall take remedial action." Presidential Memorandum, *Ensuring Transparency in Higher Education Admissions* (Aug. 7, 2025), § 3(c) (emphasis added); *see also* Snyder Suppl. Decl. ¶ 18. And nothing in the Presidential Memorandum indicates that institutions will be exempted from enforcement just because they can demonstrate good faith or a lack of willfulness.

## CONCLUSION

The Associations respectfully request a stay of implementation of the ACTS survey pursuant to 5 U.S.C. § 705 and, alternatively, that this Court provide effectively the same relief to the Associations' members via a preliminary injunction that would enjoin Defendants from:

(1) requiring that the Associations' members submit or supplement their ACTS survey submissions before the Court has issued a final ruling on the merits in this case;

(2) accessing information uploaded by the Associations' members for the ACTS survey;

(3) making ACTS data submitted by the Associations' members publicly available;

5

(4) assessing penalties on the Associations' members based on their submissions to the ACTS survey; and

(5) using the ACTS survey as a basis for any investigation or enforcement action against the Associations' members.

Dated: April 14, 2026

Respectfully submitted,

/s/ Lindsay C. Harrison

JENNER & BLOCK LLP

Shoba Pillay, BBO No. 659739
353 North Clark Street
Chicago, IL 60654
Tel: (312) 222-9350
SPillay@jenner.com

Ishan K. Bhabha *(pro hac vice)*
Lindsay C. Harrison *(pro hac vice)*
Elizabeth Henthorne *(pro hac vice)*
Hilary Ledwell *(pro hac vice)*
Mary-Claire Spurgin *(pro hac vice)*
1099 New York Avenue NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
IBhabha@jenner.com
LHarrison@jenner.com
BHenthorne@jenner.com
HLedwell@jenner.com
MSpurgin@jenner.com

*Counsel for Intervenor-Plaintiff Associations Association of American Universities, Association of Independent Colleges and Universities in Massachusetts, Connecticut Conference of Independent Colleges, Maine Independent Colleges Association, North Carolina Independent Colleges and Universities, and Oregon Alliance of Independent Colleges and Universities*

6

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of April, 2026, I caused the foregoing to be electronically filed with the clerk of the court for the U.S. District Court for the District of Massachusetts, by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, a true and correct copy of the foregoing instrument and all attachments.

Dated: April 14, 2026

*/s/ Lindsay C. Harrison*

Lindsay C. Harrison (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
LHarrison@jenner.com