**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS; STATE OF CALIFORNIA; STATE OF MARYLAND; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAI'I; STATE OF ILLINOIS; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW YORK; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF VERMONT; COMMONWEALTH OF VIRGINIA; STATE OF WASHINGTON, and STATE OF WISCONSIN, <br><br> *Plaintiffs*, <br><br> *v.* <br><br> U.S. DEPARTMENT OF EDUCATION; LINDA MCMAHON, in her official capacity as Secretary of Education; OFFICE OF MANAGEMENT AND BUDGET; and RUSSELL VOUGHT, in his official capacity as Director of the Office of Management and Budget, <br><br> *Defendants*. | Case No.1:26-cv-11229 |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO
INTERVENORS' MOTIONS FOR TEMPORARY RESTRAINING ORDERS**

**INTRODUCTION**

On April 13, Barnard College, Bryn Mawr College, Middlebury College, Sarah Lawrence College, Swarthmore College, and Vassar College (collectively, "Independent College Group" or "ICG") filed a supplemental brief reiterating their request for a nationwide preliminary injunction. ICG's Pl.-Intervenors' Notice of Suppl. Authority, ECF No. 171 ("ICG's Suppl. Br."). On April 14, the Association of American Universities, Association of Independent Colleges and Universities in Massachusetts, Connecticut Conference of Independent Colleges, Maine Independent Colleges Association, North Carolina Independent Colleges and Universities, and Oregon Alliance of Independent Colleges and Universities (collectively, the "Associations," and together with the Independent College Group, "Intervenors") filed a supplemental brief similarly reiterating their request for a nationwide preliminary injunction and asserting that their members face irreparable harm. Suppl. Mem. in Supp. of Intervenor-Pl. Associations' Mots. for a TRO, ECF No. 172 ("Associations' Suppl. Br.").

**ARGUMENT**

**I. DEFENDANTS HAVE NOT FORFEITED THEIR ARGUMENTS AGAINST NATIONWIDE PRELIMINARY RELIEF.**

In the Associations' supplemental brief, they incorrectly state that Defendants have forfeited their arguments against nationwide preliminary relief under 5 U.S.C. § 705. Defendants raised their scope of relief argument in their response to Plaintiffs' motion seeking a temporary restraining order. Defs.' Opp. to Pls.' Mot. for TRO, ECF No. 68 at 20. Defendants incorporated that argument into their briefs in opposition to Intervenors' motions seeking temporary restraining orders—much as Intervenors incorporated Plaintiffs' briefing into their own briefing. Defs.' Opp. to Intervenors' Mots. for TRO, ECF No. 167 at 6-7; *see, e.g.*, AAU's Br. in Supp. of Mot. for TRO, ECF No. 86 at 12 (adopting Plaintiffs' arguments concerning the Paperwork Reduction Act).

1

Defendants then raised the argument at the March 24 hearing about Plaintiffs' motion and again at the April 13 hearing about Intervenors' motions. In short, the issue of the appropriate scope of any relief under § 705 has not been forfeited and is squarely before this Court, just as it was with respect to the relief requested by Plaintiffs.

## II. NATIONWIDE PRELIMINARY RELIEF IS NOT PROPER.

The Intervenors argue that the Administrative Procedure Act ("APA") is not bound by equitable principles and thus not subject to the Supreme Court's admonishment in *Trump v. CASA* that universal injunctions "likely exceed the equitable authority that Congress has granted to federal courts." *Trump v. CASA, Inc.*, 606 U.S. 831, 837 (2025). But, to the contrary, the APA's text does not indicate that it displaces the traditional equitable limitation of relief to the parties before the court. Indeed, § 702 of the APA explains that "[n]othing herein . . . affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground." Congress enacted the APA against a background rule that statutory remedies should be construed in accordance with "traditions of equity practice." *Hecht Co.* v. *Bowles*, 321 U.S. 321, 329 (1944). Courts "do not lightly assume that Congress has intended to depart from established principles" of equity, *Weinberger* v. *Romero-Barcelo*, 456 U.S. 305, 313 (1982), and ordinarily courts expect that Congress will make "an unequivocal statement of its purpose" if it intends to make "a drastic departure from the traditions of equity practice," *Hecht Co.*, 321 U.S. at 329.

Nothing in 5 U.S.C. § 705 requires nationwide rather than party-specific interim relief. *Cf. Trump v. Hawaii*, 585 U.S. 667, 714 (2018) (Thomas, J., concurring) ("No statute expressly grants district courts the power to issue universal injunctions. So the only possible bases for these injunctions are a generic statute that authorizes equitable relief or the courts' inherent constitutional authority. Neither of those sources would permit a form of injunctive relief that is '[in]consistent

2

with our history and traditions.'" (footnote omitted)); *id.* at 714 n.2 ("Even if Congress someday enacted a statute that clearly and expressly authorized universal injunctions, courts would need to consider whether that statute complies with the limits that Article III places on the authority of federal courts.").

Section 705 states, in relevant part:  "*On such conditions as may be required and to the extent necessary to prevent irreparable injury*, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or *to preserve status or rights* pending conclusion of the review proceedings."  5 U.S.C. § 705 (emphases added).  The statute does not say courts must "postpone the effective date of an agency action" globally, as opposed to only for the parties before it.  Critically, the statute limits its preliminary remedy to "such conditions as may be required and to the extent necessary to prevent irreparable injury" and sets out the goal of any preliminary remedy as "to preserve status and rights"—contemplating a limited remedy tailored to the injury before the court, rather than a global remedy, particularly in cases such as this one where no global injury has been presented to the court.  The text of § 705 indicates that it confirms courts' authority to issue traditional equitable relief pending judicial review, not that it authorizes global vacatur of agency action—a remedy far exceeding the traditional forms of equitable relief authorized in § 703, which sets out the remedies of the APA.  *See United States v. Texas*, 599 U.S. 670, 700 (2023) (Gorsuch, J., concurring) (explaining that it is not clear that § 705 authorizes remedies at all, rather "it might just confirm courts' authority to issue traditional equitable relief pending judicial review"); *cf. Sampson v. Murray*, 415 U.S. 61, 69, n. 15 (1974) (explaining that § 705 was "primarily intended to reflect existing law").  The legislative history of the APA too confirms that § 705 is based on traditional

3

equitable principles of party-specific rather than universal relief. *See Administrative Procedure Act*, S. Doc. No. 248, 79th Cong., 2d Sess. 277 (1946) (House report explaining that under this provision "[t]he authority granted is equitable and should be used by both agencies and courts to prevent irreparable injury or afford parties an adequate judicial remedy" and that "[s]uch relief would normally, if not always, be limited to the parties complainant and may be withheld in the absence of a substantial question for review"); *id.* at 213 (Senate report stating that "[t]he authority granted is equitable and should be used by both agencies and courts to prevent irreparable injury or afford parties an adequate judicial remedy").

District courts have denied nation-wide stays under § 705. For example, a Northern District of Texas court refused to grant a § 705 stay where, as here, the effective date for the agency action had already passed, reasoning that § 705's allowance of a court "to postpone the effective date of an agency action" does not apply where the effective date has already occurred. *See VanDerStok v. Garland*, 633 F. Supp. 3d 847, 863 (N.D. Tex. 2022).

### III. THE VAST MAJORITY OF THE INTERVENORS' MEMBERS HAVE COMPLETED OR NEARLY COMPLETED THEIR ACTS COMPONENT SUBMISSIONS AND THUS BEAR NO OR MINIMAL PROSPECTIVE BURDEN.

The Associations claim that Defendants have misled this Court by stating most of the Associations' members have completed the ACTS component. Associations' Suppl. Br. at 4. They claim that "most of the Associations' members have yet to complete the ACTS survey" and that "[f]inalizing the remaining ACTS submissions will impose a heavy burden" on those schools that had submitted all requested data but not edited, cleaned, or locked that data. *Id.* To the contrary, as of April 14, 129 of the Associations' 196 members have cleaned, locked, or completed all required years of data—meaning that they have resolved all edits errors and need only to apply final locks to their data, or have applied those final locks. Fourth Declaration of Matthew Soldner,

Ex. A ¶ 3.  As of April 13, 1635 of 2044 eligible institutions have completed and locked all required years of data.  *Id.* ¶ 2.  This data shows that, for the vast majority of schools, there is no prospective burden to complete the ACTS component—it is already complete.  These schools have no prospective burden which may be mediated by an injunction.  Moreover, the speculative fear of future enforcement action, based on schools' conjectures that their data *might* be flawed, is simply too tenuous to show that they are at imminent risk of irreparable harm.  ECF No. 68 at 11; ECF No. 168 at 7

## CONCLUSION

As Defendants have consistently requested throughout their briefs before this Court, Defendants respectfully ask that Intervenors' motions for temporary restraining orders be denied and, if preliminary relief is entered, it be limited only to those Intervenors (or their members) who have shown that they are at imminent risk of an irreparable injury.

Dated:  April 15, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

MICHELLE BENNETT
Assistant Director, Federal Programs Branch

*/s/ Brittany S. Bruns*
BRITTANY S. BRUNS (D.C. Bar 1658394)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L ST. N.W.
Washington, DC 20005
Tel:  (202) 531-1325
brittany.s.bruns@usdoj.gov
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to registered participants as identified in the Notice of Electronic Filing (NEF).

Dated:  April 15, 2026                                 Respectfully submitted,


                                                       */s/ Brittany S. Bruns*
                                                       BRITTANY S. BRUNS