# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS; STATE OF CALIFORNIA; STATE OF MARYLAND; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAI'I; STATE OF ILLINOIS; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF VERMONT; COMMONWEALTH OF VIRGINIA; STATE OF WASHINGTON, and STATE OF WISCONSIN, | Case No. 1:26-cv-11229-FDS |
|        Plaintiffs, |  |
|    v. |  |
| U.S. DEPARTMENT OF EDUCATION; LINDA MCMAHON, in her official capacity as Secretary of Education; OFFICE OF MANAGEMENT AND BUDGET; and RUSSELL VOUGHT, in his official capacity as Director of the Office of Management and Budget, |  |
|        Defendants. |  |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION SEEKING REMAND WITHOUT VACATUR

1

**TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................... 2

TABLE OF AUTHORITIES ............................................................................................. 3

INTRODUCTION ............................................................................................................. 4

LEGAL STANDARD ....................................................................................................... 5

ARGUMENT .................................................................................................................... 5

    I.    Defendants Have Failed to Provide a Reasoned Explanation for Remand ........................ 5

        A.    Defendants Cannot Cure Their Arbitrary Promulgation of the ACTS Survey on Remand .................................................................................................................... 6

        B.    Defendants' Requested Remand Cannot Cure the Substantial Procedural Violations Underlying the ACTS Survey ............................................................................ 9

    II.    Voluntary Remand Is Frivolous and Would Not Resolve the Deficiencies Identified by the Court ....................................................................................................................... 11

    III.    The Sought-After Remand Will Unduly Prejudice the Plaintiffs by Forcing Additional Briefing Without Resolving the Deficiencies Underlying the ACTS Survey ......................... 12

    IV.    Addressing Defendants' Errors Requires Reconsideration on Remand, Not Merely Further Justification ................................................................................................ 14

CONCLUSION ................................................................................................................ 15

**TABLE OF AUTHORITIES**

<u>CASES</u>

*Alpharma, Inc. v. Leavitt*, 460 F.3d 1 (D.C. Cir. 2006)...................................................... 8

*Cadillac of Naperville, Inc. v. NLRB*, 14 F.4th 703 (D.C. Cir. 2021). .......................................5, 11

*Camp v. Pitts*, 411 U.S. 138 (1973)................................................................. 13

*Carpenters Indus. Counsil v. Salazar*, 734 F. Supp. 2d 126 (D.D.C. 2010) ................................... 9

*Cent. Me. Power Co. v. FERC*, 252 F.3d 34 (1st Cir. 2001). ....................................................... 5, 8

*DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020). ................................................. 5, 6, 8, 10

*Ecological Rights Foundation v. EPA*, 2022 WL 4130818 (D.D.C. Sept. 12, 2022)...................... 9

*Franklin v. Prospect Mortg., LLC*, 2013 WL 6423389 (E.D. Cal. Dec. 9, 2013)......................... 13

*Hatfield v. Blue Cross & Blue Shield of Mass., Inc.*, 162 F. Supp. 3d 24 (D. Mass. 2016) ............ 9

*Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379 (D.C. Cir. 2017) ............................................. 9

*Maine v. Wheeler*, 2018 WL 6304402 (D. Me. Dec. 3, 2018) .......................................................... 9

*Rhodes v. U.S. Dep't of Army*, 2025 WL 1334467 (D.D.C. Apr. 21, 2025) .................................... 9

*Seafreeze Shoreside, Inc. v. U.S. Dep't of the Interior*, 123 F.4th 1 (1st Cir. 2024)...................... 13

*U.S. Food & Commercial Workers Union, Local No. 663 v. USDA*, 532 F. Supp. 3d 741 (D. Minn. 2021)................................................................................................................................. 7

*Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414 (D.C. Cir. 2018) ....................................... 9

<u>REGULATIONS</u>

5 C.F.R. § 1320.5(d)(2)(iv) ........................................................................................................... 10

5 C.F.R. § 1320.8(d)(2)(i) ............................................................................................................. 10

**INTRODUCTION**

In their motion for a preliminary injunction, the Plaintiffs presented evidence that the Admissions Consumer Transparency Supplement ("ACTS") survey forced Institutions of Higher Education ("IHEs") across the country to devote hundreds of hours to completing an unprecedented data collection in only four months; that this process was plagued with confusion and errors; and that IHEs feared enforcement actions, tens of thousands of dollars in fines, and the potential loss of critical Title IV funds based on Defendants' hasty rollout of the ACTS survey. Defendants now contend that a one-month remand will resolve the issues before the Court. Their proposed remand, however, will address none of these deficiencies. Instead, Defendants seek a remand only to offer a post-hoc justification for their rushed implementation of the ACTS survey.

Defendants' motion should be denied. Because Defendants are foreclosed from relying on rationales that the agency did not consider at the time of its decision, their proposed remand would be futile. Defendants have already submitted hundreds of pages of agency records to this Court, all devoid of the explanations they now seek to advance in support of their agency action. Moreover, in addition to finding error in Defendants' failure to adduce any reasoned explanation for their rushed implementation of the ACTS survey, the Court also found that the implementation itself was arbitrary and capricious. The remand proposed by Defendants, however, will not resolve any of the deficiencies underlying that process, such as the onerous data demands or unclear data definitions. Lastly, any remand will frustrate judicial economy and unduly prejudice Plaintiffs by forcing additional briefing without resolving key issues before the Court. To the extent Defendants discover additional reasoning supporting their implementation of the ACTS survey, such rationales

should be evident from the administrative record and can be further briefed at summary judgment without need for a remand.

## LEGAL STANDARD

Remand is only available in limited scenarios: for an agency to take new agency action or, in some instances, for the agency to offer a "fuller explanation of the agency's reasoning at the time of the agency action," *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20-21 (2020). But while a Court may remand for a "fuller explanation," "[t]his route has important limitations." *Id.* at 21. In particular, "[w]hen an agency's initial explanation indicates the determinative reason for the final action taken, the agency may elaborate later on that reason (or reasons) but may not provide new ones." *Id.* at 20-21 (citations and quotation marks omitted). In deciding whether to remand, courts consider whether the agency has provided a reasoned explanation for remand, whether remand would unduly prejudice the non-moving party, and whether the agency's request appears to be frivolous or made in bad faith. *Cadillac of Naperville, Inc. v. NLRB*, 14 F.4th 703, 719 (D.C. Cir. 2021). Courts also examine "the severity of the [agency's] errors, the likelihood that they can be mended without altering the [agency action], and . . . the balance of equities and public interest considerations." *Cent. Me. Power Co. v. FERC*, 252 F.3d 34, 48 (1st Cir. 2001). Because the proposed remand would be frivolous and cannot cure the legal errors identified by this Court, the Court should deny Defendants' motion.

## ARGUMENT

### I.    Defendants Have Failed to Provide a Reasoned Explanation for Remand

Defendants fail to provide a reasoned explanation for their requested remand because their remand would not resolve the legal errors underlying their agency action. Defendants concede that the only reason for their requested remand would be to "further explain" their prior decision—not

to reconsider the agency action originally taken. Defs.' Br. in Supp. of Mot. to Remand, Doc. No. 196, at 2 (hereinafter, "Defs.' Br."). Yet Defendants' requested remand cannot cure the unlawfulness of their action because: (1) Defendants seek only to present impermissible, post-hoc rationalizations; and (2) further explanation cannot cure Defendants' procedural violations.

### A. Defendants Cannot Cure Their Arbitrary Promulgation of the ACTS Survey on Remand

Remand should be denied because further explanation cannot cure the arbitrary manner in which Defendants promulgated the ACTS survey. This Court held that Plaintiffs are likely to prevail in their claims that Defendants arbitrarily promulgated the ACTS survey in a "rushed and chaotic manner," including because Defendants summarily adopted a new data collection on a 120-day timeline without reasoned explanation, without meaningfully addressing comments raising concerns with that rushed process, and without considering alternatives; and because Defendants failed to consider an important aspect of the problem: how the Department of Education ("the Department") would effectively manage significantly expanding its data collection while simultaneously being shut down. Memo. & Order, Doc. No. 142, at 6, 26-32. Defendants cannot cure these fundamental errors on remand.

Defendants claim that, on remand, they would explain "the importance of releasing the ACTS component quickly to alleviate the risk of data loss due to schools' data retention policies" and "the importance of finishing the ACTS data collection during the 2025-2026 school year to permit release of data in time to be of use to applicants submitting their applications during the 2026-2027 school year." Defs.' Br. at 8. Yet such post-hoc rationalizations are clearly foreclosed under *Regents*. *See Regents*, 591 U.S. at 20 (an agency is "limited to [its] original reasons, and [the] explanation must be viewed critically to ensure that the recission is not upheld on the basis of impermissible post hoc rationalization" (citation omitted)); *U.S. Food & Commercial Workers*

6

*Union, Local No. 663 v. USDA*, 532 F. Supp. 3d 741, 779 (D. Minn. 2021) ("The purpose of a remand without vacatur in this case would be to ensure that the agency meaningfully considers the comments it disregarded and weighs the significant policy issues . . . . It is difficult to see, on this record, how the agency could address the Final Rule's deficiencies without coming up with new reasons for its decision."). Defendants provided no such justifications when originally promulgating their survey. *See, e.g.*, Appendix F: Comment Matrix, Doc. No. 100-4, at 6 (answering concerns about "the timeline for implementing the ACTS collection" by summarily citing the President's directive). Indeed, in the four briefs they have filed thus far, Defendants have failed to cite any agency documents that provide the justifications they now advance as a basis for their decision making,[1] and the "fuller explanation" Defendants proffer is absent from the hundreds of pages of agency records the Defendants have already submitted to this Court. Thus, while remand to elaborate on the original reasons Defendants provided for their final agency action might be permissible in some circumstances, here they cannot cure their failure to consider critical issues by offering post-hoc justifications for overlooked concerns and seeking remand to expand on their newly minted justifications. *See U.S. Food & Commercial Workers Union, Local No. 663*, 532 F. Supp. 3d at 779.

Additionally, remand would not cure Defendants' failure to consider how the Department would manage significantly expanding its data collection while it is simultaneously being dismantled. As this Court explained, the Department "never even acknowledged the existence of the staff reductions [at the Department], much less explain[ed] how its reduced staff will be able to keep up with an increased workload." Memo. & Order, Doc. No. 142, at 31; *see* Memo. & Order,

---

[1] The only agency document cited by Defendants purports to provide an explanation of their request for "multiple years of data." *See* Defs.' Br. at 8 (citing doc. no. 100-4). It does not address the 120-day timeline imposed by Defendants.

Doc. No. 186, at 16. Defendants incorrectly dismiss this defect by selectively quoting the Court's statement that "the *current* state of the [Department] is not relevant to the Court's APA review." Memo. & Order, Doc. No. 186, at 16 (emphasis added). In doing so, Defendants misread the Court's order, which clearly explained that the Court was concerned with the state of the Department *at the time of the agency decision*, and, in particular, with Defendants' "failure to consider, respond to, or acknowledge concerns about [the Department's] capacity to implement a massive expansion of IPEDS on an expedited timeline while eliminating the NCES altogether or undertaking (at a minimum) a substantial downsizing." *Id.* Because the problem is Defendants' failure to consider the issue altogether, remand is futile, as the Department cannot further explain reasons that it never gave in the first place. *See Regents*, 591 U.S. at 23 ("Permitting agencies to invoke belated justifications . . . can upset the orderly functioning of the process of review." (citation omitted)).

The cases Defendants cite are unavailing. These cases permitted remand for fuller explanation because the administrative record indicated that the agency could resolve the deficiency before the Court, for example, to explain why the FDA should approve a particular dosage of a new drug, *see Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 12 (D.C. Cir. 2006), or for additional proceedings to assess a deficiency rate charge implemented by FERC, *Central Me. Power Co.*, 252 F.3d at 47-48. The agency decision here resulted in a chaotic process that unduly burdened scores of IHEs and put them at risk of fines and enforcement actions. Such a defective process cannot be undone through explanation alone.

A Court may also grant remand where there is a genuine possibility that the agency will *change* its original action. *See Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 386-87 (D.C. Cir. 2017) ("The leading voluntary remand cases confirm that agency reconsideration of the action

under review is part and parcel of a voluntary remand."); *Maine v. Wheeler*, 2018 WL 6304402, at *2 (D. Me. Dec. 3, 2018) (remand may be a suitable remedy where "the agency intends to take further action with respect to the original agency decision on review" (quoting *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018))). While an admission of error is not required, an agency "ordinarily does at least need to profess intention to reconsider, re-review, or modify the original challenged agency decision." *Rhodes v. U.S. Dep't of Army*, 2025 WL 1334467, at *1 (D.D.C. Apr. 21, 2025) (quoting *Limnia, Inc.*, 857 F.3d at 387). The remand sought by Defendants achieves none of these objectives. The cases highlighted by Defendants underscore the key distinctions between this case and cases where remand is an appropriate remedy because an agency intends to reconsider its original decision. For example, in *Ecological Rights Foundation v. EPA*, 2022 WL 4130818 (D.D.C. Sept. 12, 2022), the parties consented to remand and the EPA had proposed amendments to the disputed regulation. Similarly, in *Carpenters Indus. Counsil v. Salazar*, 734 F. Supp. 2d 126 (D.D.C. 2010), the parties also consented to remand, and the agency had admitted that the challenged action was legally erroneous. Here, Defendants have neither confessed error nor expressed any intent to amend their agency action.

### B. Defendants' Requested Remand Cannot Cure the Substantial Procedural Violations Underlying the ACTS Survey

Additionally, Defendants fail to provide a reasoned explanation for remand because any explanation cannot cure the substantial procedural violations that occurred when Defendants promulgated the survey. To cure a procedural failure, an agency generally must take new agency action correcting the error. *See, e.g.*, *Hatfield v. Blue Cross & Blue Shield of Mass., Inc.*, 162 F. Supp. 3d 24, 43 (D. Mass. 2016) (explaining that remand could address procedural violations by "providing [plaintiff] with the full and fair process which he was denied"); *cf. Regents*, 591 U.S. at 21 (citation omitted) (if remanding for new agency action, the agency must "comply with the

procedural requirements" of the new agency action). Requiring new agency action to rectify such violations is not an "idle" or "useless formality." *Regents*, 591 U.S. at 22 (citation omitted). Rather, "[r]equiring a new decision before considering new reasons promotes agency accountability, by ensuring that parties and the public can respond fully and in a timely manner to an agency's exercise of authority," and it prevents agencies from "invok[ing] belated justifications" that would force "both litigants and courts to chase a moving target." *Id.* at 22-23 (citations omitted). Such "values would be markedly undermined" by allowing Defendants to "rely on reasons offered . . . months after [the agency action] . . . and after . . . courts had identified flaws in the original explanation." *Id.* at 23.

Defendants assert that "[t]his is not a case where the agency has failed to follow the required procedures." Defs.' Br. at 6. However, this statement ignores swaths of allegations raised by Plaintiffs, including claims that Defendants failed to provide adequate notice of the survey instrument as required under 5 C.F.R. § 1320.8(d)(2)(i), Pls.' Amended Compl., Doc. No. 191 ¶ 98, that Defendants violated 5 C.F.R. § 1320.5(d)(2)(iv) in seeking more than three years of data, *id.* ¶ 102, and that Defendants failed to conduct a privacy impact assessment in violation of the E-Government Act of 2002, *id.* ¶ 70. Similarly, in their Amended Complaint, Plaintiffs have now squarely asserted that the record submitted by Defendants does not in fact support the certification required under the PRA, an issue that this Court had determined was not properly before it at the time it granted Plaintiffs' Motion for a Preliminary Injunction. *Id.* ¶¶ 87-96. All of these allegations identify fatal procedural deficiencies, none of which can be cured by Defendants' proposed remand. `

II.    **Voluntary Remand Is Frivolous and Would Not Resolve the Deficiencies Identified by the Court**

In determining whether to permit remand, courts consider whether "the agency's request appears to be frivolous or made in bad faith." *Cadillac of Naperville*, 14 F.4th at 719 (citation omitted). Defendants' request for a remand only until June 19, 2026, highlights the frivolous nature of their request. Defs.' Br. at 6. June 19 is just over two weeks from this Court filing. Even if this Court were to rule immediately after Plaintiffs file their opposition, Defendants' suggestion that they will complete remand proceedings in two weeks shows that Defendants will neither provide significant further explanation of their decision making nor meaningfully reevaluate their original action. Indeed, it is unclear how a two-week remand could allow Defendants to uncover sufficient justifications for Defendants' actions when they have already had multiple opportunities to brief oppositions to motions for preliminary injunctions and two opportunities to present oral argument on these issues—none of which elicited adequate justification for the rushed implementation of the ACTS survey. As the Court explained, the problems with Defendants' actions arose from the "rushed and chaotic manner in which the ACTS was promulgated." Mem. & Order, Doc. No. 142, at 6. Defendants' proposed remand promises little more than yet another rushed proceeding that fails to adequately grapple with the significant interests at stake.

Moreover, in seeking their requested remand, Defendants misread the Court's opinion and overlook key components of Plaintiffs' allegations. Defendants claim that the Court "identified only one error" in their implementation of the ACTS survey, namely, the Department's "failure to explain" its rushed timeline for implementation. Defs.' Br. at 10. Defendants, however, fail to acknowledge the Court's finding that the "[t]he principal problem . . . [arose] from the rushed and chaotic manner in which the ACTS was promulgated." Mem. & Order, Doc. No. 142, at 6; *id.* ("The manner in which NCES handled the process . . . epitomizes arbitrary and capricious agency

action."). Nothing proposed by Defendants would address this problematic process, the consequences of which were well documented in the twenty-three declarations submitted in support of Plaintiffs' Motion for a Preliminary Injunction and credited by the Court. *Id.* at 33 ("What is in the record are scores of affidavits from officials from public university systems of plaintiffs detailing the substantial and ongoing challenges with completing the ACTS survey."). Giving Defendants two weeks to generate post-hoc justifications for the ACTS survey will not cure these deficiencies, as it cannot convert their process to the reasoned decision making required of agencies under the APA.

And while the Court found fault with Defendants' failure to adequately explain the justifications for their rushed process, generating a more fulsome explanation cannot be an end unto itself, particularly where the rushed timeline "led directly to the failure of NCES to engage meaningfully with the institutions during the notice-and-comment process to address the multitude of problems presented by the new requirements." *Id.* at 6. The remand proposed by Defendants could not resolve their "failure . . . to engage meaningfully" with these comments, as there can be no meaningful engagement where Defendants have already committed to a forgone conclusion, which is to reject any alternatives to the problematic ACTS survey and proceed with the same chaotic process challenged by Plaintiffs and Plaintiff-Intervenors.

### III. The Sought-After Remand Will Unduly Prejudice the Plaintiffs by Forcing Additional Briefing Without Resolving the Deficiencies Underlying the ACTS Survey

Defendants also claim that the remand will conserve judicial resources. Defs.' Br. at 9. Yet a remand would consume far more judicial resources than allowing this litigation to proceed in its normal course and unduly prejudice Plaintiffs as a result. Should the Court deny this motion, the appropriate next step would be for Defendants to produce the administrative record. *See* 5 U.S.C. §706 ("In making the foregoing determinations, the court shall review the whole record or those

parts of it cited by a party"); *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[C]ourts are to decide, on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review.").

Defendants contend that the remand will "permit the Department to provide further explanation of its reasoning at the time of the promulgation of the ACTS component." Defs.' Br. at 6. But "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Seafreeze Shoreside, Inc. v. U.S. Dep't of the Interior*, 123 F.4th 1, 27 (1st Cir. 2024) (developments after challenged agency decisions are not part of the administrative record). To the extent that the administrative record suggests that Defendants considered issues absent from the current record, those issues will presumably be before the Court at summary judgment. But judicial economy is not served by prolonging litigation for Defendants to create a new record for the Court's consideration.

A grant of Defendants' motion would frustrate judicial economy and prejudice the Plaintiffs by forcing additional steps in the litigation process without curing the underlying deficiencies in the ACTS survey. Plaintiffs reject Defendants' contention that the ACTS survey can be cured by further explanation alone. As a result, any remand will surely result in more motion practice, with Defendants likely moving to dissolve the preliminary injunction and Plaintiffs seeking court protection as a result.[2] *See Franklin v. Prospect Mortg., LLC*, 2013 WL 6423389, at *3 (E.D. Cal. Dec. 9, 2013) (agreeing that a party "would be prejudiced by being forced to proceed in duplicative . . . motion practice"). By contrast, if litigation were to proceed without a remand, the next steps in litigation are for Defendants to produce the administrative record and answer Plaintiffs'

---

[2] Defendants state that the preliminary injunction will stay in place during the remand but are silent on whether they would agree that the preliminary injunction stay in place after the remand.

Amended Complaint and for the parties to brief summary judgment, a single round of dispositive briefing. Judicial efficiency will not be served by a remand that is sure to generate additional briefing for this Court and prolong the time before dispositive motions practice.

IV.    **Addressing Defendants' Errors Requires Reconsideration on Remand, Not Merely Further Justification**

Finally, to the extent remand could address the problems in this case, it would require more than two weeks and far more than simply offering additional explanation for decisions the Department has already made. The Court has already found that the challenged ACTS survey was adopted in a "rushed and chaotic manner." Memo. & Order, Doc. No. 142, at 6. Fixing problems stemming from that flawed process requires the Department to reconsider both the substance of the new ACTS survey and the process by which the component was adopted.

On an adequate remand, the Department would need to meaningfully respond to concerns raised during the notice-and-comment period about issues such as the ambiguity of key terms, the lack of guidance concerning data that IHEs do not collect or cannot reliably reconstruct, and the privacy concerns raised by reporting student data in small cells. Meaningfully responding to these concerns would likely involve measures such as convening a Technical Review Panel or conducting testing or pilot programs to assess feasibility and institutional burden—the very sorts of processes that the Department has historically undertaken to ensure the integrity of data collected through IPEDS, but which the Department discarded without reasoned explanation in its rush to implement the ACTS survey.  Without undertaking those substantive steps, remand would amount to little more than an opportunity for the Department to restate its prior, flawed decisions in different, but equally flawed terms.

**CONCLUSION**

For these reasons, the Defendants' Motion Seeking Remand Without Vacatur should be denied.

Respectfully submitted,

ANDREA JOY CAMPBELL
   *Attorney General*
   *Commonwealth of Massachusetts*
By: /s/ *Michelle R. Pascucci*
Michelle R. Pascucci
   *State Trial Counsel*
Laila Ameri
Jared Cohen
Carol Guerrero
   *Assistant Attorneys General*
1 Ashburton Pl.
Boston, MA 02108
michelle.pascucci@mass.gov
laila.ameri@mass.gov
jared.b.cohen@mass.gov
carol.guerrero@mass.gov

*Counsel for the Commonwealth of Massachusetts*

ROB BONTA
  *Attorney General for the State of*
  *California*
By: /s/ Delbert Tran
Delbert Tran
  *Deputy Attorney General*
Michael L. Newman
  *Senior Assistant Attorney General*
Virginia Corrigan
  *Supervising Deputy Attorney General*
Brandy Doyle
Nicholas Keats
Kenneth Sugarman
  *Deputy Attorneys General*
California Attorney General's Office
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
(415) 510-3563

ANTHONY G. BROWN
  *Attorney General for the State of Maryland*
By: /s/ *Virginia A. Williamson*
Virginia A. Williamson
  *Assistant Attorney General*
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6584
vwilliamson@oag.maryland.gov

*Counsel for the State of Maryland*

JENNIFER DAVENPORT
  *Attorney General of New Jersey*
By: /s/ *Nancy M. Trasande*
Nancy M. Trasande
  *Civil Rights Section Chief*
Jonathan Mangel
  *Deputy Attorney General*
Jillian Lewis Ollwerther
  *Deputy Attorney General*
Richard J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625
(609) 696-5365
Nancy.Trasande@law.njoag.gov*
Jonathan.Mangel@law.njoag.gov*
Jillian.Ollwerther@law.njoag.gov*

*Counsel for the State of New Jersey*

15

Michael.Newman@doj.ca.gov
Virginia.Corrigan@doj.ca.gov
Brandy.Doyle@doj.ca.gov
Nicholas.Keats@doj.ca.gov
Kenneth.Sugarman@doj.ca.gov
Delbert.Tran@doj.ca.gov

*Counsel for the State of California*

AARON D. FORD
  *Attorney General*
By: /s/ K. Brunetti Ireland
K. Brunetti Ireland*
  *Chief of Special Litigation*
Office of the Nevada Attorney
General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
kireland@ag.nv.gov

*Counsel for the State of Nevada*

LETITIA JAMES
  *Attorney General of New York*
By: /s/ *Jessica Ranucci*
Jessica Ranucci*
  *Special Counsel*
Rabia Muqaddam*
  *Chief Counsel for Federal Initiatives*
28 Liberty Street
New York, NY 10005
(929) 736-3392
jessica.ranucci@ag.ny.gov

*Counsel for the State of New York*

PHILIP J. WEISER
  *Attorney General of Colorado*
By: /s/ *Nora Passamaneck*
Nora Passamaneck*
  *Senior Assistant Attorney General*
Sarah H. Weiss*
  *Senior Assistant Attorney General*
Colorado Department of Law
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
nora.passamaneck@coag.gov
sarah.weiss@coag.gov

*Counsel for the State of Colorado*

DAN RAYFIELD
  *Attorney General of Oregon*
By: /s/ *Leanne Hartmann*
Leeanne Hartmann
  *Assistant Attorney General*
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880
Leanne.Hartmann@doj.oregon.gov

*Counsel for the State of Oregon*

16

WILLIAM TONG
   *Attorney General of Connecticut*
By: /s/ *Mary Lenehan*
Mary Lenehan*
   *Assistant Attorney General*
165 Capitol Ave
Hartford, CT 06106
(860) 808-5210
Mary.Lenehan@ct.gov

*Attorney for the State of Connecticut*


KATHLEEN JENNINGS
   *Attorney General of the State of*
   *Delaware*
By: /s/ *Ian R. Liston*
Ian R. Liston
   *Director of Impact Litigation*
Rose E. Gibson
Vanessa L. Kassab
   *Deputy Attorneys General*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
ian.liston@delaware.gov

*Counsel for the State of Delaware*


ANNE E. LOPEZ
   *Attorney General for the State of*
   *Hawaiʻi*
By: /s/ *Kalikoʻonālani D. Fernandes*
Kalikoʻonālani D. Fernandes*
   *Solicitor General*
David D. Day*
   *Special Assistant to the Attorney*
   *General*
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

*Counsel for the State of Hawaiʻi*


PETER F. NERONHA
   *Attorney General of Rhode Island*
By: /s/ *Chandana Pandurangi*
Chandana Pandurangi*
   *Special Assistant Attorney General*
150 South Main Street
Providence, RI 02903
cpandurangi@riag.ri.gov

*Counsel for the State of Rhode Island*


CHARITY R. CLARK
   *Attorney General of Vermont*
By: /s/ *Ryan P. Kane*
Ryan P. Kane
   *Deputy Solicitor General*
109 State Street
Montpelier, VT 05609
(802) 828-2153
ryan.kane@vermont.gov

*Counsel for the State of Vermont*


JAY JONES
   *Attorney General of Virginia*
By: /s/ *Tillman J. Breckenridge*
Tillman J. Breckenridge
   *Solicitor General*
Office of the Attorney General of Virginia
202 N. 9th Street
Richmond, Virginia 23219
(804) 786-2071
solicitorgeneral@oag.state.va.us

*Counsel for the Commonwealth of Virginia*

17

KWAME RAOUL
   *Attorney General*
   *State of Illinois*
By: /s/ *Aleeza Strubel*
Aleeza Strubel*
   *Complex Litigation Counsel*
Elizabeth H. Jordan*
   *Social Equity Counsel*
Office of the Illinois Attorney General
115 S. Lasalle Street
Chicago, IL 60603
312-814-3000
Aleeza.Strubel@ilag.gov
Elizabeth.Jordan@ilag.gov

*Counsel for the State of Illinois*

RAÚL TORREZ
Attorney General of New Mexico
By: /s/ *Amy Senier*
Amy Senier
Senior Counsel
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM 87504-1508
505-490-4060
asenier@nmdoj.gov
*Attorneys for the State of New Mexico*

NICHOLAS W. BROWN
   *Attorney General*
   *State of Washington*

By: /s/ *Molly Powell*
Molly Powell*
Mina Shahin*
   *Assistant Attorneys General*
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
molly.powell@atg.wa.gov
mina.shahin@atg.wa.gov

*Counsel for the State of Washington*

JOSHUA L. KAUL
   *Attorney General*
   *State of Wisconsin*
By: /s/ *Faye B. Hipsman*
Faye B. Hipsman*
   *Assistant Attorney General*
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
608-264-9487
faye.hipsman@wisdoj.gov

*Counsel for the State of Wisconsin*

*Admitted Pro Hac Vice*