**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, *et al.,* | |
| *Plaintiffs,* | Case No. 1:26-cv-11229-FDS |
| v. | |
| U.S. DEPARTMENT OF EDUCATION, *et al.,* | |
| *Defendants.* | |

**ASSOCIATIONS' AND INDEPENDENT COLLEGE GROUP'S RESPONSE TO
DEFENDANTS' MOTION SEEKING REMAND WITHOUT VACATUR**

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

ARGUMENT ..........................................................................................................................2

    I.      Defendants' Requested One-Month Remand Will Not and Cannot Solve the Problems with ACTS. ................................................................................2

    II.     The Remedy Defendants Seek is Novel and Contrary to Precedent. .......................6

    III.    Remand to the Agency Would Be Appropriate Only if the Department Commits to a More Fulsome Process and the Court First Vacates the ACTS Survey. ...............................................................................................11

CONCLUSION ......................................................................................................................13

**TABLE OF AUTHORITIES**

**CASES**

*Alpharma, Inc. v. Leavitt*, 460 F.3d 1 (D.C. Cir. 2006) ....................................................................9

*American Waterways Operators v. Wheeler*, 427 F. Supp. 3d 95 (D.D.C. 2019) ..........................9

*Association of American Universities. v. Department of Defense*, 806 F. Supp. 3d
     79 (D. Mass. 2025)......................................................................................................................10

*Camp v. Pitts*, 411 U.S. 138 (1973) ...............................................................................................9

*Carpenters Industrial Council v. Salazar*, 734 F. Supp. 2d 126 (D.D.C. 2010).............................7

*Ecological Rights Foundation v. EPA*, No. 19-cv-2181, 2022 WL 4130818
     (D.D.C. Sept. 12, 2022) ...............................................................................................................7

*Ethyl Corp. v. Browner*, 989 F.2d 522 (D.C. Cir. 1993)....................................................................7

*Franklin v. Massachusetts*, 505 U.S. 788 (1992)............................................................................10

*Independent United States Tanker Owners Committee v. Lewis*, 690 F.2d 908
     (D.C. Cir. 1982) ........................................................................................................................10

*Limnia, Inc. v. United States Department of Energy*,
     857 F.3d 379 (D.C. Cir. 2017) ....................................................................................................8

*Maine v. Wheeler*, No. 1:14-cv-00264, 2018 WL 6304402 (D. Me. Dec. 3, 2018) .......................8

*Melone v. Coit*, 100 F. 4th 21 (1st Cir. 2024) .................................................................................10

*National Parks Conservation Ass'n v. Salazar*, 660 F. Supp. 2d 3 (D.D.C. 2009) .........................8

*National Parks Conservation Ass'n v. United States. EPA*, 803 F.3d 151 (3d Cir.
     2015) ............................................................................................................................................7

*National Resources Defense Council v. United States Department of Interior*,275
     F. Supp. 2d 1136 (C.D. Cal. 2002) .............................................................................................8

*Public Citizen v. Federal Motor Carrier Safety Administration*, 374 F.3d 1209
     (D.C. Cir. 2004) ........................................................................................................................12

*Rhodes v. United States Department of the Army*, No. 24-cv-3619, 2025 WL
     1334467 (D.D.C. Apr. 21, 2025) .................................................................................................7

*Rural Empowerment Ass'n for Community Help v. United States EPA*, No. 18-cv-
     2260, 2022 WL 444095 (D.D.C. Feb. 14, 2022) ........................................................................8

*SEC v. Chenery*, 318 U.S. 80 (1943) ...............................................................................10

*United Steel v. Mine Safety & Health Administration*, 925 F.3d 1279 (D.C. Cir. 2019) .........................................................................................................................12

*Utility Solid Waste Activities Group v. EPA*, 901 F.3d 414 (D.C. Cir. 2018) .................................8

*WildEarth Guardians v. Bernhardt*, No. 20-cv-56, 2020 WL 6255291 (D.D.C. Oct. 23, 2020) .............................................................................................................8

OTHER AUTHORITIES

Joint Motion Involving Settlement Agreement of All Parties for Partial Vacatur, *Lennox International, Inc. v. United States Department of Energy*, No. 14-60535 (5th Cir. July 29, 2015), ECF No. 148.................................................................... 9-10

Order, *Lennox International, Inc. v. United States Department of Energy*, No. 14-60535 (5th Cir. Aug. 10, 2015), ECF No. 150.............................................................10

**INTRODUCTION**

This Court should deny Defendants' unprecedented request to allow them to provide *post hoc* rationalizations for a single one of the many problems with the ACTS survey.

Defendants' proposed remand could not solve the fundamental flaws that this Court has found plague the ACTS survey. Defendants do not acknowledge—much less propose a plan to actually and adequately address—these flaws, which extend beyond the single timing issue they propose to supply reasons for. Rather than grapple with the full scope of the problem, Defendants minimize and mischaracterize the issues with ACTS. The remand they suggest is thus, at best, an exercise in futility that will only consume additional resources from the parties and the Court.

The request also flies in the face of fundamental principles of APA review and of Supreme Court precedent expounding on those principles. In *Department of Homeland Security v. Regents of the University of California*, the Supreme Court emphasized that agency actions must be judged by the agency's contemporaneous reasons, not by whether agencies or their lawyers can later come up with some explanation that they think will salvage a deficient action. 591 U.S. 1, 15-21 (2020). That is for good reason: Limitations on post-hoc rationalization serve important purposes of promoting public confidence in, accountability for, and orderly judicial review of agency actions. *Id.* at 22-23. The Court in *Regents* thus identified only two specific situations in which an agency remand may be appropriate: to start the rulemaking process anew or a very narrow exception to allow agencies to further elaborate on their contemporaneous reasons. Neither is applicable here, where a remand would not commence a new rulemaking and where the Department provided *no* contemporaneous reason for its rushed timeline and therefore has nothing to elaborate on. It is therefore unsurprising that Defendants' cases are inapposite and provide no support for their novel request.

1

At the very least, a remand would only be appropriate if the Department confessed error, committed to a fulsome process appropriate to remedy the full scope of the ACTS survey's defects, and agreed to vacatur—none of which the Department has agreed to do.

## ARGUMENT

### I. Defendants' Requested One-Month Remand Will Not and Cannot Solve the Problems with ACTS.

Defendants move for only a limited voluntary remand to explain the ACTS survey's implementation timeline. The problems with the survey previously identified by this Court, and by Plaintiffs and Intervenors, are not limited to a single gap in explanation, but rather reflect a fundamentally flawed process that no amount of *post hoc* rationalization can cure. Defendants' request for a one-month reprieve to provide an "amplified articulation" of its reasoning for the ACTS survey's unreasonably rushed implementation timeline, *see* ECF No. 196 at 5, fails to grapple with the scope of the problem or this Court's decisions in this case.

Defendants' characterization of this Court's preliminary injunction decision as identifying "only one error," which is "not severe," ECF No. 196 at 6, is inconsistent with this Court's detailed findings. As this Court has held, and as Plaintiffs and Intervenors have argued at length, the Department's implementation of the ACTS survey was fundamentally flawed in ways that extend far beyond the question of timing identified in Defendants' motion and encompass failures in the substance of the Department's reasoning, its engagement with public comments, its consideration of reasonable alternatives, and its acknowledgment of basic operational realities and concerns.

This Court found that the Department "entirely failed to consider an important aspect of the problem" insofar as it did not acknowledge the simultaneous dismantling of the Department of Education and the radical reduction in National Center for Education Statistics ("NCES") staff. ECF No. 142 at 25 (cleaned up) (citation omitted). While implementing "a massive expansion of

2

IPEDS," the Department "never even acknowledged the existence of the staff reductions, much less explain[ed] how its reduced staff will be able to keep up with an increased workload." *Id.* at 30-31. Its only response was to assert "confidence" in its "joint capacity" with contractors. *Id.* at 7, 31. But, as this Court observed, "the fact that NCES simultaneously expressed a willingness to work with institutions on an ongoing basis to provide guidance, while failing to address the fact that it intended to cease operations as soon as 'permitted by law,' is further evidence that the promulgation of the ACTS was arbitrary and capricious." *Id.* at 7. No retroactive timeline explanation can cure this failure.

Plaintiffs and Intervenors have also argued that the ACTS survey raises serious privacy concerns because the level of data disaggregation creates a significant risk that individual students can be identified, particularly in smaller institutions or programs. *See* ECF Nos. 7, 86, 112, 133, 154. Moreover, Plaintiffs and Intervenors have claims that federal statutes prohibit putting student privacy at risk in these ways—claims that further explanation of ACTS indisputably would not cure. ECF No. 192 ¶ 96; ECF No. 193 ¶¶ 71-72. These are procedural and design flaws that cannot and would not be remedied by Defendants' proposed remand.

Defendants' brief is not a genuine effort at agency self-correction; it is an attempt to supplement an administrative record that Defendants themselves insist requires no supplementation. Defendants are crystal clear that the Department "continues to believe that it has adequately explained its promulgation of the ACTS component." ECF No. 196 at 2. Defendants also assert that the Department "complied with all required procedures" and "undertook two rounds of notice and comment," *id.* at 6, as if checking these procedural boxes alone could substitute for the substantive engagement with comments that this Court found lacking, ECF No. 142 at 26-31; ECF No. 186 at 15. At no point do Defendants acknowledge, much less grapple with,

3

the Court's finding that the Department failed to "meaningfully engage with comments that raised serious concerns about the impact of that rushed process." ECF No. 142 at 26. A party that refuses to admit it erred cannot credibly claim it will cure those unacknowledged errors on remand.

Nor, even if Defendants did acknowledge the scope of the problems with ACTS, could the limited remand they request even possibly correct the full range of their errors. Adding new reasons for the Department's timing will not cure this Court's finding that the Department failed to meaningfully engage with thousands of public comments on the design, scope, and feasibility of the ACTS survey. *Id.* at 6. Commenters raised concerns about data standardization and quality; the lack of clear definitions and practical guidance; risks of identifying individuals in disaggregated data; the unavailability of requested historical data; challenges with collecting decentralized admissions data; and the likelihood of operational disruptions for smaller institutions. *Id.* at 2-3, 12. The Department's responses were "largely cursory," consisting of "optimistic statements and assurances about future guidance." *Id.* at 3. As this Court found, rather than explain why its data definitions were adequate or how institutions would achieve standardization, the Department simply expressed "confidence" that institutions "can provide the high-quality data required" and pointed them to the IPEDS Help Desk for assistance. *Id.* at 3-4, 29. Defendants' proposed remand offers no opportunity to re-do this engagement or substantively change the ACTS survey to address the problems identified in these comments.

Even as to the rushed implementation timeline—the one issue Defendants seek to address on remand—additional reasons will not remedy the Department's failure to consider reasonable alternatives. Commenters raised specific, substantive proposals for how ACTS could be designed to be less burdensome and produce more reliable results, such as conducting Technical Review Panels to refine data definitions, implementing a pilot or optional-year data collection, using

4

sample surveys, and adopting different data categorizations. *See* ECF No. 142 at 27-30; ECF No. 186 at 15. Yet the Department "did not adequately consider" any alternative; it "simply rejected any alternatives as infeasible in light of the deadline, and instead pointed out ways in which the impact of its decision might be less harmful than anticipated or mitigated in the future." ECF No. 142 at 29-30. Nor will a remand change the Department's failure to explain its departure from prior processes. This Court has found that the Department abandoned its longstanding, deliberate procedures for developing IPEDS components—a process designed "to permit careful consideration of complex issues and to permit the relevant institutions sufficient time to adapt to new requirements"—without providing a reasoned explanation. *Id.* at 4, 28-29. Under the "change-in-position doctrine," an agency must "display awareness that it is changing position and offer good reasons for the new policy." *Id.* at 25 n.12 (citing *FDA v. Wages & White Lion Invs., L.L.C.*, 145 S. Ct. 898, 918 (2025)). The Department's circular assertion that the President's deadline made adhering to its prior process or any shorter timeline "infeasible" cannot be cured by additional explanations, because the agency cannot retroactively supply the missing independent rationale for its actions. *Id.* at 28.

Finally, Defendants' proposed remand fails on its own terms as a vehicle for conserving judicial resources. Because a remand directed solely at "further explanation" of the Department's reasoning cannot address the breadth of deficiencies already identified, granting such a request would require this Court and the parties to pause merits litigation only to permit Defendants to prepare a document that, by Defendants' own admission, can merely "elaborate" on existing reasoning without remedying the underlying flaws. That is not conservation of judicial resources, it is a detour to nowhere.

## II.    The Remedy Defendants Seek is Novel and Contrary to Precedent.

Defendants' request to spin up entirely new reasons for their actions—in the midst of litigation, after this Court has found the agency's record likely deficient—flies in the face of fundamental principles of administrative law as articulated by the Supreme Court. The APA "requires agencies to engage in 'reasoned decisionmaking'" *at the time of* their actions, not merely to construct an explanation after the fact. *Regents*, 591 U.S. at 16 (quoting *Michigan v. EPA*, 576 U.S. 743, 750 (2015)). The Supreme Court in *Regents* thus explained that an agency has two options when faced with explanatory deficiencies: (1) the agency can "tak[e] *new* agency action," 591 U.S. at 21 (emphasis in original); or (2) "the agency can offer 'a fuller explanation of the agency's reasoning *at the time of the agency action*,'" *id.* at 20-21 (emphasis in original) (quoting *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990) (other citations omitted)). The Court elaborated further: The latter approach "has important limitations"—namely, that once an agency has given a reason for its actions—the agency may elaborate later on that reason (or reasons) but may not provide new ones." *Id.* And because of that, the Court cautioned that any elaboration on prior reasons "'must be viewed critically' to ensure that the [agency action] is not upheld on the basis of impermissible '*post hoc* rationalization.'" *Id.* (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).

Defendants here seek to exercise neither option. As to the first, they have explicitly disclaimed taking any new action. ECF No. 196 at 2 (affirming that "[t]he Department continues to believe that it has adequately explained its promulgation of the ACTS component" and intends to "proceed to merits litigation" in defense of same). As to the second, their request is not to "elaborate" on existing reasons, but to provide "new ones"—which *Regents* forbids. 591 U.S. at 21. The Department's response to commenters' concerns about the rushed implementation timeline for ACTS was to point back to the Presidential Memorandum and the Secretary's

directive, which itself simply cited the Presidential Memorandum. *See* ECF No. 142 at 26-28. But as this Court found, neither the President, nor the Secretary, nor the Department "ever explained the purpose of the truncated timeline." *Id.* at 26. And the Court made clear that "if the President does not provide a reasoned explanation for a decision, then, at the very least, the agency implementing that decision must provide one." *Id.* at 30. Defendants suggest that their remand proposal will allow them "to provide that reasoned explanation," ECF No. 196 at 7, but that would be exactly what *Regents* has said they cannot do: "provide new [reasons]" for their actions. 591 U.S. at 21.

Unsurprisingly, then, Defendants' cases provide no support for their novel request. They instead fit cleanly within one of the two options identified by the Supreme Court in *Regents*.

On the one hand, a number of Defendants' cases involve the first option: remands to give agencies the opportunity to *revisit* a challenged decision and take further action. *See, e.g.*, *Nat'l Parks Conser. Ass'n v. EPA*, 803 F.3d 151, 157 (3d Cir. 2015) (describing prior remand for agency to "consider" petitioners' "concerns," resulting in new rulemaking); *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993) (allowing remand for agency to "redetermine" whether to grant petitioner's application "where events pending appeal dr[e]w [the agency's] decision in[to] question"); *Rhodes v. Dep't of the Army*, No. 24-cv-3619, 2025 WL 1334467, at *1 (D.D.C. Apr. 21, 2025) (granting unopposed motion to remand so Army could "reconsider [petitioner's] application and reexamine its 2022 decision"); *Ecological Rights Found. v. EPA*, No. 19-cv-2181, 2022 WL 4130818, at *3, *13 (D.D.C. Sep. 12, 2022) (remanding following entry of a settlement agreement that required reconsideration of regulatory text and undertaking public comment); *Maine v. Wheeler*, No. 1:14-cv-00264, 2018 WL 6304402, at *2 (D. Me. Dec. 3, 2018) (noting remand may be appropriate "so long as *the agency intends to take further action* with respect to

7

the original agency decision on review") (emphasis added); *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 131 (D.D.C. 2010) (a report by the agency's inspector general criticizing the agency's decisional process prompted the agency to seek remand); *Nat'l Parks Conser. Ass'n v. Salazar*, 660 F. Supp. 2d 3, 4 (D.D.C. 2009) (determination by the Secretary of the Interior that the agency failed to engage in proper consultation in promulgating a rule prompted the agency to seek remand); *see also Limnia, Inc. v. Dep't of Energy*, 857 F.3d 379, 386-88 (D.C. Cir. 2017) (reversing a grant of voluntary remand where the agency "did not intend to revisit [its] original . . . decisions" and noting that voluntary remand "ordinarily" requires that the agency at least need[s] to "profess intention to reconsider, re-review, or modify the original agency decision that is the subject of the legal action").

Other voluntary remand cases similarly involve an agency's reconsideration of its prior action, often in light of an intervening factual or legal development. *See Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018) (granting in part and denying in part EPA's motion to remand to reconsider its statutory authority for and approach to aspects of a rule governing disposal of coal waste); *Rural Empowerment Ass'n for Cmty. Help v. EPA,* No. 18-cv-2260, 2022 WL 444095, at *2 (D.D.C. Feb. 14, 2022) ("Defendants seek remand so that they can conduct notice-and-comment rulemaking to revise or rescind the [challenged] rule."); *WildEarth Guardians v. Bernhardt*, No. 20-cv-56, 2020 WL 6255291, at *2 (D.D.C. Oct. 23, 2020) (granting agency's request for voluntary remand to allow agency to conduct "further NEPA analysis"); *Nat'l Res. Def. Council v. Dep't of Interior*, 275 F. Supp. 2d 1136, 1141 (C.D. Cal. 2002) (granting agency's request for voluntary remand of certain designations in light of a change in case law related to the interpretation of relevant issues). Here, Defendants have already told the Court they do not intend to revisit the decision, so none of these cases support their request.

8

On the other hand, Defendants cite cases in which agencies sought to engage in the narrow supplementation option blessed by *Regents*—*i.e.*, further explaining an agency's contemporaneous rationale for *existing* reasons, but not providing "new ones." 591 U.S. at 21. In particular, Defendants rely heavily on a statement in a D.C. Circuit case suggesting that in some situations, agencies may be allowed to provide an "amplified articulation" of prior reasoning. *See Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6-7 (D.C. Cir. 2006); *see also Regents*, 591 U.S. at 20-21 ("[A]n agency [may] provide an 'amplified articulation' of a prior 'conclusory' observation," subject to "important limitations" precluding *post hoc* rationales.) (citing *Alpharma*, 460 F.3d at 5); *Camp v. Pitts*, 411 U.S. 138, 143 (1973) (Where "contemporaneous explanation of the agency decision" rested on particular finding, the "validity of the [agency] action must, therefore, stand or fall on the propriety of that finding … on the administrative record made.").[1] But that's just the problem: here, there is no prior reason to expand on, and the Department is instead offering to supply new reasons. *See* ECF No. 196 at 7 (offering to "provide an explanation of the timeline" that this Court found was not provided in the first place). *Alpharma* thus does not support Defendants' novel request. In other cases, courts have remanded to allow agencies to correct ministerial or clerical errors. *See Am. Waterways Operators v. Wheeler*, 427 F. Supp. 3d 95, 100 (D.D.C. 2019) ("Remand to an agency is generally appropriate to correct simple errors, such as clerical errors, transcription errors, or erroneous calculations.") (quoting *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001)); *see also, e.g.*, Joint Motion Involving Settlement Agreement of All

---

[1] To the extent Defendants may claim *Alpharma*, *Camp*, or other pre-*Regents* cases may be read to suggest that an agency has broad authority to expand its reasoning on remand without undertaking new agency action, *Regents* subsequently clarified the "important limitations" of remands where an agency is not undertaking new action: in particular, as noted above, an agency may further explain its existing contemporaneous reasons for an action, "but may not provide new ones." 591 U.S. at 21.

Parties for Partial Vacatur, *Lennox Int'l, Inc. v. Dep't of Energy*, No. 14-60535 (5th Cir. July 29, 2015), ECF No. 148 (seeking an unopposed voluntary remand after a series of Department of Energy calculation errors); Order, *Lennox Int'l*, No. 14-60535 (5th Cir. Aug. 10, 2015), ECF No. 150 (granting remand).

Unlike these cases, Defendants' proposed remand would amount to precisely the kind of *post hoc* reasoning the APA forbids. *SEC v. Chenery*, 318 U.S. 80, 92 (1943) (agency actions must be reviewed based upon "the considerations … upon which [the agency's] action was based"); *Melone v. Coit*, 100 F.4th 21, 31 (1st Cir. 2024) ("It is a bedrock principle of administrative law that a court reviewing agency action may consider only the agency's explanation given at the time the relevant decision was made, as opposed to its post hoc rationale."); *see also Ass'n of Am. Univs. v. Dep't of Def.*, 806 F. Supp. 3d 79, 118 (D. Mass. 2025) ("Defendants' post-hoc justifications cannot be the basis to uphold agency action under the APA."). That limitation applies with "equal force" whether the *post hoc* rationale is supplied by counsel representing the agency in litigation, or by agency officials themselves on remand. *Regents*, 591 U.S. at 23.

The prohibition on *post hoc* reasoning "serves important values of administrative law." *Id.* at 22-23. *First*, limiting an agency to its contemporaneous reasoning "instills confidence that the reasons given are not simply 'convenient litigating position[s],'" but instead reflect the actual rationale of the agency decisionmakers. *Id.* (citation omitted); *see also Indep. U.S. Tanker Owners Comm. v. Lewis*, 690 F.2d 908, 931 (D.C. Cir. 1982) ("Agency candor is crucial" in the APA context). *Second*, the contemporaneous explanation requirement "promot[es] 'agency accountability' by ensuring that parties and the public can respond fully and in a timely manner to an agency's exercise of authority." *Regents*, 591 U.S. at 22-23; *see also Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992) ("The APA sets forth the procedures by which federal agencies are

10

accountable to the public."). *Third*, barring consideration of "belated justifications" promotes orderly judicial review, as a contrary rule would "forc[e] both litigants and courts to chase a moving target." *Regents,* 591 U.S. at 23. Allowing agencies to proffer *post hoc*, mid-litigation reasons for prior actions undermines every one of those values: If agencies may simply provide the reasons for their actions later—based, no less, on what reviewing courts find they should have considered and explained at the outset—APA cases would become an endless merry-go-round of "remands," ending only when the agency finally constructs a rationale sufficient to explain away any defects identified by challengers or the reviewing court. And in that world, the APA would lose its teeth as a tool for ensuring reasoned decisionmaking, public legitimacy, and accountability.

The Court should reject Defendants' novel request. Defendants do not commit to reengaging in the rulemaking process or otherwise reconsidering the implementation of ACTS—a path that would allow them to rely on new reasons. *Id.* at 21. In fact, Defendants are perfectly clear that they are *not* open to changing their minds and undertaking new action, given their promise to defend the merits of the original ACTS survey in just a month's time. ECF No. 196 at 2. Yet, recognizing that ACTS is unlikely to survive judicial review based on the agency's contemporaneous rationale, they boldly ask for a do-over in the midst of litigation. This Court should not be the first to bless such an end-run around the APA's contemporaneous-explanation requirement.

### III.  Remand to the Agency Would Be Appropriate Only if the Department Commits to a More Fulsome Process and the Court First Vacates the ACTS Survey.

Tellingly, Defendants devote less than one page to defending the propriety of remand before they spend pages and pages arguing that the Court should not vacate ACTS. But as the discussion above makes clear, the Court should only even *consider* remand if Defendants commit to redoing the rulemaking process, taking full account of what the Court has said about timing,

engagement with comments, and other issues identified in the course of this litigation. Only then would a remand even conceivably allow the Department to address the myriad defects identified by the Court and by Plaintiffs and Intervenors. And should the Department commit to undertaking the full scope of reconsideration necessary here, vacatur would be appropriate. *See, e.g.*, *Pub. Citizen v. Fed. Motor Carrier Safety Admin.*, 374 F.3d 1209, 1222-23 (D.C. Cir. 2004) (remanding and vacating rule after court found rulemaking process to be arbitrary and capricious where agency had failed to consider an "important aspect of the problem").

Vacatur would be warranted here, given that this Court has found that the implementation of ACTS was likely arbitrary and capricious. *See* ECF No. 142 at 7; ECF No. 186 at 14-15; *see also United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) ("The ordinary practice is to vacate unlawful agency action."). And while Defendants spill much ink insisting that the APA requires a determination of the merits before vacatur, they fail to explain why a determination of the merits could not precede their requested remand, whether by stipulation converting the preliminary injunction to a permanent one or expedited summary judgment briefing. If Defendants acknowledge that the ACTS survey requires further justification and truly wish to facilitate an "efficient resolution," ECF No. 196 at 2, they should stop defending the merits of their deeply flawed actions, confess error, and begin the process anew, with the benefit of Technical Review Panels, adequate notice, meaningful engagement with stakeholder comments and concerns, and a timeline and process that respects institutions of higher education and their reliance interests.

**CONCLUSION**

For the foregoing reasons, the Associations and Independent College Group respectfully

ask this Court to deny Defendants' motion seeking remand without vacatur.

Dated:  June 2, 2026                              Respectfully submitted,

/s/ Jeffrey J. Nolan                              /s/ Lindsay C. Harrison

HOLLAND & KNIGHT, LLP                             JENNER & BLOCK LLP

Jeffrey J. Nolan (BBO No. 625091)                 Lindsay C. Harrison (pro hac vice)
Olivia L. O'Dwyer (BBO No. 705961)                Ishan K. Bhabha (pro hac vice)
Krithika Rajkumar (BBO No. 706554)                Elizabeth Henthorne (pro hac vice)
Ashley V. Hart (BBO No. 709247)                   Hilary Ledwell (pro hac vice)
Allison L. Carvalho (BBO No. 717091)              Mary-Claire Spurgin (pro hac vice)
10 Saint James Avenue                             1099 New York Avenue NW
15th Floor                                        Suite 900
Boston, MA 02116                                  Washington, DC 20001
Telephone: (617) 854-1459                         Tel: (202) 639-6000
jeffrey.nolan@hklaw.com                           LHarrison@jenner.com
olivia.odwyer@hklaw.com                           IBhabha@jenner.com
krithika.rajkumar@hklaw.com                       BHenthorne@jenner.com
ashley.hart@hklaw.com                             HLedwell@jenner.com
allison.carvalho@hklaw.com                        MSpurgin@jenner.com

*Counsel for ICG Plaintiff-Intervenors*           Shoba Pillay (BBO No. 659739)
                                                  353 North Clark Street
                                                  Chicago, IL 60654
                                                  Tel: (312) 222-9350
                                                  SPillay@jenner.com

                                                  *Counsel for Association of American*
                                                  *Universities, Association of Independent*
                                                  *Colleges and Universities in Massachusetts,*
                                                  *Connecticut Conference of Independent*
                                                  *Colleges, Maine Independent Colleges*
                                                  *Association, North Carolina Independent*
                                                  *Colleges and Universities, and Oregon*
                                                  *Alliance of Independent Colleges and*
                                                  *Universities*

13

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of June, 2026, I caused the foregoing to be electronically filed with the clerk of the court for the U.S. District Court for the District of Massachusetts, by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, a true and correct copy of the foregoing instrument and all attachments.

Dated: June 2, 2026

/s/ Lindsay C. Harrison

Lindsay C. Harrison *(pro hac vice)*
JENNER & BLOCK LLP
1099 New York Avenue NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
LHarrison@jenner.com